Madden, Judge,
delivered the opinion of the court:
This case is here upon the Government’s motion to dismiss the plaintiff’s petition. We therefore summarize the allegations of the petition.
The plaintiff and her husband, to whose rights she has succeeded, were in possession of certain mining claims in Madera County, California, called the Jay Gould placer claim and the Riverside quartz claim. The Gould claim was located January 1,1906, and is 660 feet wide and 1,320 feet long and comprises a portion of the bed and banks of the San Joaquin River. The Riverside quartz claim adjoins it, and is approximately 1,500 feet long and 600 feet wide. It was located in 1897. These claims were worked by the predecessors of the plaintiff and by her husband and herself in accordance with the mining laws of the United States and of the State of California, and they had performed work thereon in excess of the annual assessment work required by law. They *350 had constructed a canal, built a home and outbuildings, mine buildings and a mill, and placed rails in the inclined shaft and mining facilities for working it. Their extensive prospecting and mining cost some $35,000 in money and work which added largely to the value of the Riverside mine.
The workings disclosed a valuable lense area in the claim, which had been partially mined when it caved in, whereupon an inclined shaft was being driven to the lense area, but this shaft could not be completed because the imminence of the Government’s taking, about which this suit complains, made it impossible to obtain funds. The plaintiff’s husband and his predecessors had taken some $46,000 worth of gold out of the lense area before their mine caved in.
The plaintiff says that the value of the two claims and the buildings and machinery thereon was $104,000, and she seeks to recover that sum. She says that in 1942 she and her husband were informed by an agent of the Government that their mining claims and properties would be taken and appropriated and would constitute a part of the site and bed of the reservoir and lake which would be created by the construction of the Friant Dam in the San Joaquin River, which dam was to be twelve and one-half miles downstream from the claims. The Friant Dam project was a project of the Bureau of Reclamation, Department of the Interior, for the purpose of flood control and irrigation. Plaintiff says that she and her husband and the agent of the Government then estimated that the claims and buildings and machinery were worth $104,000.
In 1942 the Government, acting through the General Land Office of the Department of the Interior, filed contests in its District Land Office at Sacramento, California, asserting that the claims here in question were “nonmineral in character” and that “minerals have not been found within the limits of said claims in sufficient quantities to constitute a valid discovery.” The plaintiff and her husband filed answers denying the contests. After a hearing at the Land Office in Sacramento it was held that the placer claim, being in the bed of the San Joaquin River, was an invalid attempted location in the bed of a navigable river. As to this ground of invalidity the plaintiff says that the head of navigation *351 of the river is, and is by statute declared to be, some 30 miles downstream from the claims. As to the quartz claim, the [Register of the Land Office at Sacramento refused to make a decision but passed the question to Washington.
The plaintiff and her husband appealed to the Bureau of Land Management, General Land Office, Department of the Interior. The decision there was that the San Joaquin River at the place where the claims are was not navigable, but that the land where both claims were was nonmineral in character, and that no mineral deposit had been discovered therein that would warrant a prudent man’s spending his time and money in the hope of developing a paying mine therein. The plaintiff and her husband appealed from this decision to the Secretary of the Interior, who, on October 29, 1948, affirmed the previous decision, and held that “there has been no valid discovery on any of the claims involved in this appeal.”
The plaintiff says that the Government’s agents made inadequate and superficial examinations of the placer claim, and took no samples of the minerals “where the water ran” which was over three-fourths of the area of the placer claim; that at the time this superficial examination was being made, one and two man suction dredges were recovering from $5.00 to $20.00 worth of gold per hour. As to the quartz claim, the plaintiff says that the Government’s agents did not even explore the shaft leading into the caved area, and reported nothing as to the caved lense area although it was explained to them by the plaintiff’s husband. The plaintiff says that during the hearings it was stated by the Government’s representatives that the facts established by the science of geology would not and could not be considered by the Government in its determination of the questions here involved. The plaintiff says that the very question here involved is one of mining geology, since there was no question as to the possession of the plaintiff and her husband, nor as to the extensive workings which had taken place upon the claims.
The plaintiff says that the Department of the Interior based its decision upon the inadequate investigation of its agents, refused to consider the teachings of geology, upon which persons who operate California quartz gold mines *352 rely, and in effect disregarded the testimony of. a competent geologist presented by the plaintiff and her husband at the hearing, to the effect that the work done on the claims showed that they contained valuable deposits which could be expected to produce ore sufficient to pay many times the amount expended on the claim; that the assays obtained by the Government engineers showed a gold content ranging from a trace to $137.00 per ton.
'In 1944 the Government dispossessed the plaintiff and her husband from the properties; razed their dwelling house and mill, and has since covered the land with the waters of the reservoir and lake created by the Friant Dam. The plaintiff has filed a claim for compensation with the Regional Director of the Bureau of Reclamation at Sacramento.
The plaintiff, on information and belief, alleges that it was the predetermined purpose of the agents and agencies of the Department of the Interior to condemn the claims as worthless, and take them without paying for them; that the proceeding whereby agents of the Department institute contests against outside persons and then decide them is essentially vicious, and that the actions and decisions of the Government’s agencies and departments were unjust, unfair and biased, and were arbitrary and capricious and contrary to the facts and the law pertaining to the location and possession and working of mining claims and their status as property. She says that the property of herself and her husband was taken without compensation, in violation of the Constitution of the United States, and she sues for its value which, she says, was $104,000.
As we have said, the Government has made a motion requesting us to dismiss the plaintiff’s petition on the ground that this court has no jurisdiction to grant the relief prayed for.
The statutes provide that “all valuable mineral deposits in lands belonging to the United States * * * shall be free and open to exploration and purchase,” R. S., Section 2319, 30 U. S. C. 22 “but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located,” R. S., Section 2320, 30 U. S. C. 23. Thus discovery is a requisite to the creation of a valid *353 right in the claimant. Union Oil Co. v. Smith, 249 U. S. 337; Cole v. Ralph, 252 U. S. 286. The Government argues that because the Secretary of the Interior has decided that there had been no valid discovery on the lands to which the claims related, the matter ends there. This contention is too broad. The statute makes the claimant’s right dependent upon discovery of minerals, and not upon the Secretary’s decision as to whether or not there has been a discovery. The briefs and arguments of counsel do not enlighten us as to the legal basis for the contest which the Government filed in its Land Office, which contest resulted in the decision of the Secretary of the Interior that there had been no discovery. We assume, because the plaintiff does not contend to the contrary, that that was a proper way to initiate a contest as to the rights of the claimants. Our question then is whether we have jurisdiction to review the Secretary’s decision in this suit for just compensation for property taken.
As our summary of the allegations of the petition has shown, the plaintiff asserts that the Secretary, and the subordinate agencies within the Department of the Interior, based their decisions upon superficial investigations by the Department’s agents, disregarded competent and weighty evidence, refused to consider scientific evidence which was the only significant evidence available as to the quartz claim, and decided, arbitrarily and capriciously that the plaintiff and her husband had no rights. Assuming, as we must upon this motion to dismiss, that these allegations are true, they call for some sort of judicial relief, since Congress has not, so far as the parties have advised us, lodged in the Secretary the arbitrary power to take away from claimants the rights which the statutes cited above seem to give them.
As to whether this is the right court in which to seek that judicial relief, the recent decision of the Supreme Court of the United States in the case of United States v. Jones, 336 U. S. 641 is helpful. In that decision it was held that since this court has jurisdiction only to award a money judgment, and not to remand a case to an agency for further consideration on the basis of conditions enjoined by the court upon the agency, this court did not have jurisdiction of the *354 suit there involved. The court said that the Administrative Procedure Act, 5 U. S. C. 1001-1011 provided the proper review for Government agency action. As to such review, the court said:
The relief afforded, unlike that required in the Court of Claims, could thus be limited to setting aside or enjoining the Commission’s order and remanding the cause to it for further consideration, as is done in like cases reviewable by three-judge courts. Consistently with that jurisdiction also the review could be confined to the record made before the Commission rather than one compiled by independent evidence not presented to the Commission or considered by it.
We quote relevant provisions of the Administrative Procedure Act. Section 10 of that Act, 5 U. S. C. 1009, provides:
Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—
(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof._
(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute, or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. * * *
(e) * * * It [the reviewing court] shall * * * (B) hold unlawful and set aside agency action, findings and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * (5) unsupported by substantial evidence * * *.
The provisions of this act would seem to give to the courts, apparently the United States District Courts, to which the act gives jurisdiction in such cases, plenary power to shape the judicial review to fit the case. We conclude therefore that jurisdiction is in those courts and not in this court to right the wrongs which the plaintiff charges in her petition. *355 The Government’s motion to dismiss the petition is, therefore, •granted.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Ohief Judge, concur.