Joe and Lola AULSTON, et al., Plaintiffs,

v.

**The UNITED STATES, Defendant.**

No. 114–86L.

United States Claims Court.

Sept. 30, 1986.

Stephen H. Muse, San Antonio, Tex., for plaintiffs.

Glen R. Goodsell, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## OPINION

WIESE, Judge.

This Government taking case is currently before the court on defendant's motion to dismiss and plaintiff's opposition thereto. The Government asserts that the court lacks jurisdiction under 28 U.S.C. § 1491 (1982) to entertain plaintiffs' claims. The parties have briefed the issues involved, and the court heard oral argument on August 6, 1986. Thereafter, at their request, the parties were given the opportunity to further brief certain points of law. The court now concludes that the Government's motion should be granted.

## FACTS

Plaintiffs are a group of Colorado landowners who acquired title to their properties under the Act of July 17, 1914, *as amended*, 30 U.S.C. § 121 (1982). That statute grants homestead patents to qualifying entrants, but permits the Government to reserve rights to certain listed minerals, including "gas". *See id.* In plaintiffs' patents, the Government specifically reserved rights to "oil and gas".

Plaintiffs' lands are situated above the McElmo Dome, a large reservoir spanning more than 203,000 acres. The reservoir

contains carbon dioxide in a liquid state. When the patents were first granted, the carbon dioxide was not particularly significant for commercial purposes. However, with the advent of the oil shortage in the 1970s and the related development of tertiary oil recovery methods utilizing carbon dioxide, the deposits became quite valuable. The question then arose whether carbon dioxide fell within the definition of "oil and gas" reserved to the Government in plaintiffs' patents.

In the late 1970s, some of the plaintiffs went to the Interior Department requesting a determination of their ownership rights. They contended that the word "gas", as used in the Act of July 17, 1914, and in their patents, refers only to natural gas, a hydrocarbon mineral fuel, and not to a gas such as carbon dioxide.

On July 12, 1979, the Interior Department's Regional Solicitor responded in a written memorandum which determined that the United States owned the carbon dioxide under the terms of the reservation clause. The determination relied upon the provision in 43 C.F.R. § 3000.0–5(a) (1985), which defines "gas" as "any fluid, either combustible or noncombustible, which is produced in a natural state from the earth and which maintains a gaseous or rarefied state at ordinary temperatures and pressure conditions."

Following the Regional Solicitor's determination, the Government proceeded to lease to oil companies the rights to all of the carbon dioxide under plaintiffs' lands. In 1982, the Government and other local property owners entered into a contract with the Shell Oil Company known as the McElmo Dome (Leadville) Unit Agreement, which pooled their interests in the gas under their lands. Under this arrangement, gas was withdrawn from the entire reservoir through a few designated "cluster locations", with each contributing property owner receiving a share of the resulting royalties commensurate with the size of his or her tract of land. Production commenced in 1984, and since then the Government has been receiving the royalties ac-cruing from the carbon dioxide under plaintiffs' lands.

Meanwhile, in 1980, plaintiffs brought suit in the United States District Court for the District of Colorado. There they sought compensation for a taking under the "Little Tucker Act", 28 U.S.C. § 1346 (1982) and review, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (1982), of the Interior Department's adverse determination and its exercise of control over the carbon dioxide deposits.

The district court ruled that, because plaintiffs were seeking damages in excess of $10,000, their taking claims could be brought only in the Claims Court under 28 U.S.C. § 1491. The court further ruled that plaintiffs' request for review of the Interior Department's action under the APA was not ripe because they had not yet exhausted administrative remedies. The district court noted that 43 C.F.R. § 3000.4 (1985) expressly grants an administrative appeal before the Interior Board of Land Appeals ("IBLA") to any person adversely affected by an action or decision of an official of the Interior Department. And the court added that 43 C.F.R. § 4.450 *et seq.* (1985), which provides for a contest between private parties, appeared to provide an avenue for plaintiffs to raise their ownership claims against the oil company-lessee.

Armed with that decision, plaintiffs brought a private contest action under the Interior Department regulations. The Department dismissed the claim, however, because plaintiffs' assertion of ownership was against the Government, not against the private oil companies. The Department suggested that plaintiffs file an application for a disclaimer of interest under 43 U.S.C. § 1745 (1982). That section authorizes the Interior Department to issue what amounts to a quitclaim deed whenever the Secretary determines that the United States has no interest in property. Under 43 C.F.R. § 1864.4 (1985) promulgated thereunder, an applicant who is denied a disclaimer of interest has the right to appeal the decision

to the IBLA. An adverse IBLA ruling, in turn, would exhaust administrative remedies and constitute final agency action reviewable by the district court.

Plaintiffs pursued their administrative remedies and ultimately obtained a final adjudication from the IBLA determining that the Government was the owner of the carbon dioxide under plaintiffs' lands. The stage was then set for plaintiffs to return to the district court to seek review of the decision under the APA. At this point, however, plaintiffs brought suit here. They assert that what they have wanted all along is money damages (exceeding $10,000) for a Government taking, a remedy that the district court is powerless to grant.

## DISCUSSION

The question now faced by this court is whether, in its present procedural posture, the plaintiffs' taking case can be heard here in light of the IBLA's prior adjudication of their ownership rights. The answer is "no".

From the beginning, the complicating factor in this case has been plaintiffs' efforts to obtain both specific and monetary relief in a single judicial forum. That complication affects them still. For even as the district court was without authority to entertain plaintiffs' taking claims so, in turn, are we without authority to entertain what, in effect, amounts to an action to set aside the decision of the IBLA. And without such authority, the plaintiffs' claims cannot proceed here.

To explain: In order to sustain their claims to a taking of their property, plaintiffs must demonstrate a right of ownership in that property. This they cannot do given the final agency decision (the decision of the IBLA) holding that the Government, and not plaintiffs, is owner of the carbon dioxide.

To overcome this threshold obstacle to the assertion of their claims, plaintiffs argue that this court is free to look behind the IBLA's decision, that is, to reexamine that decision or else simply to ignore it. We may not do either.

Though the point has been made innumerable times, it bears repeating still that under our jurisdictional statute, 28 U.S.C. § 1491, "one must always ask * * * whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491 * * *." *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967). Hence, our jurisdiction over decisions of the IBLA (or any comparable agency decision) is restricted to situations where the right at issue involves a command (expressed either in statute or regulation) for the payment of money. *See Foote Mineral Co. v. United States*, 228 Ct.Cl. 230, 232–33, 654 F.2d 81, 84 (1981). That is not the case here.

As noted earlier, the IBLA upheld the Interior Department's decision not to grant a disclaimer of interest pursuant to 43 U.S.C. § 1745. That section provides in pertinent part that "the Secretary is authorized to issue a document of disclaimer of interest or interests in any lands in any forum suitable for recordation, where the disclaimer will help remove a cloud on the title". In no way can that statute be construed as a mandate to pay compensation for a taking, or grant any other monetary relief. Thus, review of the board's decision would be proper only in a court with general federal question jurisdiction, *i.e.*, the district court. *See* 28 U.S.C. § 1331 (1982); *Califano v. Sanders*, 430 U.S. 99, 105–07, 97 S.Ct. 980, 984–85, 51 L.Ed.2d 192 (1977). In *Rowe v. United States*, 633 F.2d 799 (9th Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981), the Ninth Circuit held that a district court does not lose jurisdiction to review an agency action merely because plaintiff's request for review is braided to a claim for contract damages justiciable only in the Claims Court. *Id.* at 802–03. By the same token, the Claims Court does not acquire authority to review an agency action otherwise reviewable only in district court merely be-

cause plaintiff's effort to obtain review is couched in terms of a taking claim.

This conclusion falls squarely in line with the decisions in *Dawson v. United States*, 113 Ct.Cl. 82, 81 F.Supp. 1021 (1949), *Patterson v. United States*, 115 Ct.Cl. 348 (1950), and *Freese v. United States*, 221 Ct.Cl. 963 (1979). Each of those cases involved a rejection by the Department of Interior of an application for patent to a mining location, followed by a suit in this court attacking the administrative action and claiming a taking of property on account of it.

In each case, the court held that the matter in suit was beyond its power to decide. In *Dawson*, the court observed that "[t]here is no basis for a suit at law to recover damages based upon an alleged unwarranted and unjustified decision holding such mining locations to be invalid." 113 Ct.Cl. at 84, 81 F.Supp. at 1022; and in *Patterson* and *Freese*, it implicitly recognized the same point when it noted that the only available remedy was one for specific relief under the APA. The court in *Freese* explained it this way:

> * * * This court does not lack general jurisdiction to determine whether a mining claim was taken by the Government without the payment of just compensation. Thus, we have general jurisdiction over all the essential elements of plaintiff's claim. We do not, however, have the particular power to overturn the Interior Department's conclusion that 26 of the mining lode claims allegedly owned by plaintiff and all of the millsite claims do not qualify as "claims" under 30 U.S.C. § 22 *et seq.* (1976), nor can we ignore such an administrative conclusion. Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District Courts. *See* Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1976); *Patterson, supra,* at 354. For this court to undertake a review of the validity of the claims declared void by the Interior Department would be to assume a function lodged elsewhere by Congress and

never contemplated for this court. We decline to adopt that position. [221 Ct.Cl. at 964–65.]

Plaintiffs answer this line of authority by arguing that the mining cases involved claims to patents that had never been issued, whereas the issue here involves the construction of patents that have already been granted. The distinction is irrelevant. As the court pointed out in *Patterson*, a plaintiff's property interest in a mining claim arises under 30 U.S.C. § 22 (1982) when a sufficient discovery of minerals occurs, not when the Interior Department decides to issue a patent. 115 Ct.Cl. at 353; *see also Skaw v. United States*, 740 F.2d 932, 935–36 (Fed.Cir.1984). Therefore, there is no legally significant difference between an agency review of a denial of a patent in the first instance and an adjudication construing the terms of an existing patent. It follows that this court has no more jurisdiction to review the IBLA decision construing plaintiffs' property rights under their existing patents than it would have had to review an IBLA affirmance of an Interior decision to deny the homestead patents outright. The court therefore has no power to review and reverse the IBLA determination that plaintiffs did not own the carbon dioxide under their lands.

Nor can plaintiffs gain any comfort from the decisions in *Bourgeois v. United States*, 212 Ct.Cl. 32, 545 F.2d 727 (1976) and *Yaist v. United States*, 228 Ct.Cl. 281, 656 F.2d 616 (1981). In those cases, like this one, the plaintiffs raised a taking claim in response to the Government's assertion of ownership over lands to which the plaintiffs also claimed title. But beyond this point, similarity ends.

The critical difference between those situations and this one lies in the fact that here the title question was examined and decided against plaintiffs in an adjudicative process by a board empowered to decide "finally for the Department". 43 C.F.R. § 4.1(b)(3) (1986). Administrative action of this character has been identified as being "widely different from ordinary executive action", *Morgan v. United States*, 298 U.S.

468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936), as indeed it is, for it entails an exercise of quasi-judicial authority within an area of special expertise. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Such an adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by a court of competent jurisdiction. Therefore, without a previous test of validity under the Administrative Procedure Act, the correctness of the administrative action must be taken as a "given" in this Tucker Act suit. *Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 899 (Fed.Cir.1986).

Finally, aside from the points just discussed, plaintiffs maintain that the IBLA had no authority to act in the matter, and therefore its decision is a nullity which this court is free to ignore. In support of that position, they rely upon *Moore v. Robbins*, 96 U.S. (6 Otto) 530, 24 L.Ed. 848 (1877), where the Supreme Court held that the United States cannot annul title to property once it is properly conveyed. In a similar manner, plaintiffs urge that title to the carbon dioxide, having been conveyed to plaintiffs in their patents, cannot now be reclaimed by what plaintiffs argue is an historically suspect reading of the Government's reservation of "oil and gas".

There is plainly no merit in this contention. The argument takes as fact the very point at issue: whether carbon dioxide was a deposit on account of which plaintiffs' lands were made subject to a reservation of oil and gas. As noted earlier, the IBLA's determination of that issue came as a result of plaintiffs' own application for a disclaimer of interest, pursuant to 43 U.S.C. § 1745. Again, as earlier noted, the IBLA's authority to entertain appeals in connection with such application is set forth in 43 C.F.R. § 1864.4. The IBLA decision was a proper exercise of administrative authority.

1. Plaintiffs also attempt to invoke the court's jurisdiction by characterizing this case as one founded upon an express or implied contract,

## CONCLUSION

For the reasons stated, the court concludes that plaintiffs cannot allege here that they own the carbon dioxide gas which they assert was taken from them by the Government without just compensation.[1] And without that necessary property interest, plaintiffs do not state a taking claim under the Fifth Amendment. Therefore, plaintiffs' complaint is dismissed.

an act of Congress, and a regulation of an executive department. The court finds these contentions too lacking in merit to warrant discussion.