DAVIS, Circuit Judge.
 

 Plaintiffs appeal from the United States Claims Court’s decision granting the Government’s motion to dismiss on the ground that the court lacks jurisdiction under 28 U.S.C. § 1491 (1982).
 
 Aulston v. United States,
 
 11 Cl.Ct. 58 (1986) (Wiese, J.). The Claims Court properly held that it lacked the power to decide appellants’ Fifth Amendment taking case in its present procedural posture in view of the Interior Board of Land Appeals’ (IBLA) prior adjudication that appellants had no ownership rights. However, because this case potentially involves fatal statute of limitations problems, we vacate the Claims Court dismissal and order it to suspend the case on its docket for a reasonable time to enable appellants to seek review and overturn (in a district court) of the adverse IBLA decision and, if successful there, to return to the Claims Court to pursue their monetary claims for a compensable taking.
 

 I. Facts
 
 [1]
 

 Plaintiffs-appellants are owners of certain tracts of land located in southwestern Colorado and originally acquired under the Act of July 17, 1914, as amended, 30 U.S.C. § 121 (1982) (“Agricultural entry or purchase of lands withdrawn or classified as containing phosphate, nitrate, potash, oil or gas; reservations to United States; application”). When the Government granted such patents to appellants, it specifically reserved for itself the rights to “oil and gas.”
 

 The parties vigorously dispute the ownership of rich deposits of liquid carbon dioxide, located in a vast reservoir beneath appellants’ land. In the Government’s view, carbon dioxide in a liquid state is embraced within the definition of “gas” as that term was used in the 1914 Act. Consequently, the Government claims ownership of the carbon dioxide under the explicit reservation of “gas" in the original land grant.
 

 According to appellants, however, Congress used the term “gas” in the 1914 Act to refer to natural gas which is a hydrocarbon. Because carbon dioxide is not a hydrocarbon, they maintain that it is not included within the reservation of “gas.” As further support for their position, appellants emphasize that, when they received their land from the Government, the commercial significance of carbon dioxide was unknown. They argue therefore that the Government could not have intended in 1914 to reserve for itself the right to minerals which, at that time, were considered worthless.
 

 In an initial attempt to establish their ownership of the carbon dioxide, various of the plaintiffs requested a determination by the Department of the Interior that the reservation by the United States of oil and gas under the lands patented pursuant to the 1914 Act did not include carbon dioxide. Relying in part upon 43 C.F.R. § 3000.0-5(a) (as amended 1985),
 
 [2]
 
 Interior deter
 
 *512
 
 mined that, under the terms of the reservation, the United States owned the carbon dioxide.
 
 [3]
 

 Soon thereafter, the Government began leasing to oil companies the rights to the carbon dioxide. Ultimately, in 1982, BLM and Shell Oil Company executed an agreement (the McElmo Dome (Leadville) Unit Agreement) under which carbon dioxide owned by the United States and other local property owners would be pooled and withdrawn.
 
 Aulston,
 
 11 Cl.Ct. at 59. Since 1984 when production began, the Government has been receiving the royalties accruing from the extraction of carbon dioxide from beneath appellants’ land.
 

 The Aulston parties’ second attempt to establish their ownership of the carbon dioxide occurred in 1980 when they filed suit in the United States District Court for the District of Colorado. In that action, plaintiffs sought (1) review of BLM’s July 12, 1979 memo designating carbon dioxide as an “oil and gas” under the 1914 Act; (2) review of the Government’s subsequent leasing of the carbon dioxide; (3) a declaratory judgment regarding the ownership of the carbon dioxide; and (4) an injunction restraining the Government from asserting a claim to the carbon dioxide deposits. Additionally, claimants alleged that the Government’s designation of carbon dioxide as a gas and the leasing to various oil companies of the mineral rights to carbon dioxide beneath their lands constituted a taking of their property and interference with their contract rights without just compensation.
 

 On March 25, 1981, the District Court dismissed the complaint. The court held that appellants’ taking claims, which exceeded $10,000, fell within the exclusive jurisdiction of the then Court of Claims under 28 U.S.C. §§ 1491 and 1346(a)(2).
 

 Moreover, the court adjudged appellants’ request for judicial review of the July 12, 1979 BLM memo not to be ripe for adjudication because of appellants’ failure to exhaust administrative remedies.
 
 [4]
 
 Despite the dismissal of their complaint, at no time did appellants act to “ripen” their claims for judicial review by challenging before the IBLA either the Government’s leases to various oil companies or the 1982 agreement between BLM and Shell Oil Company.
 

 Instead, nearly three years after the dismissal of their District Court suit, plaintiffs mounted their third attack on the Government’s claim to ownership of the carbon dioxide. This time, on January 9, 1984, appellants filed with the Department of the Interior an application for a disclaimer of interest under 43 U.S.C. § 1745. Under that statute, if the Secretary of the Interior determines that the United States has no interest in certain lands, he may issue a document of disclaimer, which operates as a quit-claim deed. However, because the agency (BLM) again concluded that the United States holds all right, title and interest to the carbon dioxide by virtue of the reservation of oil and gas contained in the 1914 Act, BLM denied the application in December 1984. On February 20, 1986, IBLA affirmed BLM’s denial of appellants’ application.
 
 [5]
 

 Appellants’ fourth attack on the Government’s assertion of ownership of the carbon dioxide furnishes the basis of the
 
 *513
 
 present appeal. Instead of seeking district court review of the IBLA decision, they took a different approach, filing suit in the Claims Court and requesting damages in excess of $10,000 for a Government taking. The complaint alleged that the Department of the Interior "arbitrarily and capriciously determined ... that reservations of ‘oil and gas’ in homestead patents, issued subject to the provisions and limitations of the Act of July 17, 1914, included deposits of pure carbon dioxide.” Relief sought included a ruling that carbon dioxide was not reservable under the 1914 Act and recovery of damages equal to the market value of the carbon dioxide subsequently withdrawn through leasing.
 

 II.
 
 Discussion
 

 In a thorough and well-reasoned opinion, the Claims Court held that appellants, in order to prevail on their taking claim, would have to demonstrate a right of ownership in the carbon dioxide deposits.
 
 Aul-ston,
 
 11 Cl.Ct. at 60. However, by refusing to compel BLM to issue a disclaimer of interest, IBLA had affirmed the Government’s ownership of the mineral rights. Because the IBLA decision would prevent appellants from asserting the requisite property interest, the Claims Court dismissed the complaint. The court emphasized that it was not free to reexamine or ignore the IBLA determination. As the court noted, “the title question was examined and decided against [appellants] in an adjudicative process by a board empowered to decide ‘finally for the Department [of the Interior].’ 43 C.F.R. § 4.1(b)(3) (1986).” Moreover,
 

 [s]uch an adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by a court of competent jurisdiction. Therefore, without a previous test of validity under the Administrative Procedure Act, the correctness of the administrative action must be taken as a ‘given’ in this Tucker Act suit.
 

 Aulston,
 
 11 Cl.Ct. at 62, citing
 
 Florida Rock Indus., Inc. v. United States,
 
 791 F.2d 893, 899 (Fed.Cir.1986),
 
 cert. denied,
 
 — U.S.-, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987).
 

 We agree with Judge Wiese that in order to press their taking claim before the Claims Court appellants must first obtain a proper reversal of the adverse IBLA ruling. As noted earlier,
 
 supra
 
 note 5, that IBLA decision marked the exhaustion of appellants’ administrative remedies and constituted final agency action. Although judicial review of the IBLA determination is not precluded, Congress has vested review in the district courts, not in the Claims Court.
 

 The present appeal is evocative of and controlled by
 
 Freese v. United States,
 
 221 Ct.Cl. 963 (1979). There, Freese’s taking claim depended upon a determination that he had a compensable property interest in 31 unpatented mining lode claims and 5 unpatented millsite claims which he alleged were taken by the Government.
 
 Id.
 
 at 964. After the Department of the Interior had declared null and void 31 of Freese’s 36 claims, he appealed first to the agency and then to the IBLA. Although he initially sought district court review of the adverse administrative determinations, he later voluntarily withdrew his suit.
 
 Id.
 
 at 965 n. 1.
 

 To Freese’s argument that the Court of Claims should exercise ancillary jurisdiction to review the Interior Department determination, the court responded as follows:
 

 This court does not lack general jurisdiction to determine whether a mining claim was taken by the Government without the payment of just compensation. Thus, we have general jurisdiction over all the essential elements of plaintiff’s claim. We do not, however, have the particular power to overturn the Interior Department’s conclusion that 26 of the mining lode claims allegedly owned by plaintiff and all of the millsite claims do not qualify as “claims” under 30 U.S.C. § 22
 
 et seq.
 
 (1976), nor can we ignore such an administrative conclusion. Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District Courts.
 
 See
 
 Administrative Proce
 
 *514
 
 dure Act, 5 U.S.C. §§ 701-06 (1976);
 
 Patterson [v. United States,
 
 115 Ct.Cl. 348] at 354 [(1950)].
 
 For this court to undertake a review of the validity of the claims declared void by the Interior Department would be to assume a function lodged elsewhere by Congress and never contemplated for this court.
 
 We decline to adopt that position.
 
 See Dawson [v. United States,
 
 113 Ct.Cl. 82] at 84, 81 F.Supp. [1021] at 1022 [(1949)].
 

 221 Ct.Cl. at 964-65 (emphasis added). Earlier cases to the same effect are
 
 Patterson v. United States,
 
 115 Ct.Cl. 348 (1950) and
 
 Dawson v. United States,
 
 113 Ct.Cl. 82 (1949). These opinions all hold squarely that, where the administrative agencies of the Interior Department have decided that the United States (not the claimants) own the disputed property, the Court of Claims could not review or overturn that administrative determination even though that court indisputably had jurisdiction over “taking” claims. The authority to review Interior’s administrative decision lay initially in the district courts and then in the regional courts of appeals. The same rule now applies to the Claims Court which succeeded (in this respect) to the jurisdiction of the Court of Claims.
 
 [6]
 
 As Judge Wiese noted, “the Claims Court does not acquire authority to review an agency action otherwise reviewable only in district court merely because plaintiff’s effort to obtain review is couched in terms of a taking claim.”
 
 Aulston,
 
 11 Cl.Ct. at 60-61. It is therefore clear that the Claims Court correctly decided that, given the present procedural posture of this case, that tribunal lacked jurisdiction at this time to entertain appellants’ taking suit.
 

 III.
 
 Suspension and Remand
 

 Appellants complain that they have been placed in “legal limbo” by the dismissal of their lawsuits, first by the District Court and then by the Claims Court. As noted above, the District Court held that appellants’ taking claim, which exceeded $10,000, was cognizable only in the Claims Court. Conversely, the Claims Court held that, absent reversal of the IBLA decision, that court was powerless to entertain the taking claim. Of course, appellants remain free to challenge the IBLA decision in a district court. As a practical matter, however, pursuit of this course—if the current suit is now dismissed—enhances to a near certainty the risk that the statute of limitations will run on appellants’ taking claim and extinguish their rights. Under the Tucker Act, their taking claim must be filed within six years after the claim accrues. 28 U.S.C. § 2501 (as amended 1982). Dismissal of appellants’ present Claims Court suit may prove lethal to their taking claim in the likely event that the statute of limitations expires during the course of the district court challenge to the IBLA decision.
 
 [7]
 

 Appellants urge that justice requires that the Claims Court action should be stayed pending resolution of the issues in a district court proceeding. We agree and vacate the Claims Court dismissal of appellants’ suit. We also direct the Claims Court to hold appellants’ taking claim on its docket in suspension for such time as is reasonably necessary for appellants to challenge the IBLA decision in a district court and, if successful there, to return promptly to the Claims Court.
 
 [8]
 
 Of course,
 
 *515
 
 should appellants at this late date fail to employ all deliberate speed in seeking district court review, dismissal would be entirely appropriate.
 

 The merits of the opinion of the Claims Court are affirmed. The judgment of the Claims Court is vacated on the conditions specified in this opinion.
 

 VACATED.
 

 [1]
 

 . For a more complete recitation of the background,
 
 see Aulston,
 
 11 Cl.Ct. at 58-60.
 

 [2]
 

 . That regulation defines “gas" as "any fluid, either combustible or noncombustible, which is produced in a natural state from the earth and which maintains a gaseous or rarefied state at
 
 *512
 
 ordinary temperatures and pressure conditions.”
 
 See Aulston,
 
 11 Cl.Ct. at 59.
 

 [3]
 

 . Specifically, in a memorandum dated July 12, 1979, the Regional Solicitor of the Bureau of Land Management (BLM) concluded that “carbon dioxide gas is included in an oil and gas reservation in a patent issued under the Act of July 17, 1914.” In addition to the regulation quoted above in footnote 2, the BLM memo also cited, in support of its conclusion, the legislative history of the 1914 Act and general principles of statutory construction.
 

 [4]
 

 . Applicable BLM regulations expressly guarantee the right to an administrative appeal before the IBLA (Interior Board of Land Appeals) to “any party adversely affected by a decision of the [BLM].” 43 C.F.R. § 3000.4 (1981 and 1985).
 

 [5]
 

 . Although this adverse IBLA ruling exhausted their administrative remedies and constituted final agency action reviewable by a district court under the federal question statute, 28 U.S.C. § 1331, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706, appellants elected to bypass district court review.
 
 See Aulston,
 
 11 Cl.Ct. at 60.
 

 [6]
 

 . The decisions of the Court of Claims are binding on this panel.
 
 South Corp. v. United States,
 
 690 F.2d 1368, 1370-71, 215 USPQ 657, 658 (Fed.Cir.1982).
 

 [7]
 

 . The original complaint, filed in the Claims Court on February 24, 1986, alleged that the taking occurred on July 12, 1979, the date of the BLM memo which concluded that carbon dioxide was included in the reservation of oil and gas in the 1914 Act. However, to escape the six-year statute of limitations, appellants later amended their complaint to change the date of the purported taking to August 24, 1982, the effective date of the McElmo Dome (Leadville) Unit Agreement.
 

 [8]
 

 . The Court of Claims regularly suspended its proceedings to allow a party to proceed with other litigation deemed preliminary to a Court of Claims determination.
 
 See, e.g., Engels v. United States,
 
 230 Ct.Cl. 465, 678 F.2d 173, 174-75 (1982);
 
 Change-All Souls Housing Corp. v. United States,
 
 229 Ct.Cl. 380, 671 F.2d 463, 466 (1982);
 
 Honeywell Inc. v. United States,
 
 228 Ct.Cl. 591, 661 F.2d 182, 186 (1981). There is no reason why the Claims Court cannot do likewise.