NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JON SALTZMAN,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1785

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-01014-DAT, Judge David A. Tapp.

---

Decided:  January 23, 2025

---

JON SALTZMAN, Wickenburg, AZ, pro se.

MICHELLE MELTON, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by TODD KIM; KATELIN SHUGART-SCHMIDT, Denver, CO.

---

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

Jon Saltzman appeals the decision of the United States Court of Federal Claims (Claims Court) dismissing his complaint for lack of jurisdiction and for failure to state a claim. *Saltzman v. United States*, No. 13-cv-1014, 2024 WL 1575211 (Fed. Cl. Apr. 11, 2024) (*Decision*). While we agree with the Claims Court that it currently does not possess the power to adjudicate Mr. Saltzman's takings claim, we *vacate* the Claims Court dismissal for reasons explained below.

BACKGROUND

I

The General Mining Law of 1872 (Mining Law), 30 U.S.C. §§ 22–54, allows U.S. citizens to explore, discover, and extract certain minerals on federal lands. The Bureau of Land Management (BLM), an agency within the United States Department of the Interior, administers the Mining Law. *See* 43 C.F.R. pt. 3830; BLM Handbook H-3830-1, *Administration of Mining Claims, Mill Sites, and Tunnel Sites* (2015).

A valid mining claim is required to exclude others from valuable deposits discovered on federal lands. The Mining Law recognizes two types of property rights: unpatented and patented. *See generally* 30 U.S.C. §§ 22–54. A valid unpatented mining claim confers a possessory right to a mineral deposit and the lands containing it, but not fee title. *See, e.g.*, 30 U.S.C. §§ 23, 26, 35–36; 43 C.F.R. § 3830.5 (defining "Unpatented mining claim"). These claims are "real property" separate from the underlying fee estate, which remains with the government. *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 316–17 (1930) (citations omitted). Conversely, a patented mining claim results in "fee title to the land" passing from the government to the claim holder. *Kunkes v. United States*, 78 F.3d 1549,

1551 (Fed. Cir. 1996); *see* 30 U.S.C. §§ 29, 35–36; 43 C.F.R. pt. 3860.

To obtain a valid unpatented mining claim, a claimant must "locate" the claim in accordance with applicable statutory and regulatory requirements, record the claim with BLM, and pay a one-time location fee to BLM. *See* 30 U.S.C. §§ 28, 28g; 43 U.S.C. § 1744(b); 43 C.F.R. pts. 3830, 3832–34. The most common unpatented mining claims are "placer" mining claims and "lode" mining claims. *See* 43 C.F.R. pt. 3832 (describing differences between placer and lode mining claims). The maximum amount of land allowed per claim depends on the type of claim. Placer mining claims are limited to 20 acres for individual claims but, for associations, may be aggregated up to 20-acre parcels per locator, up to a maximum of 160 acres for at least eight co-locators. *Id*. § 3832.22(b).

After locating an unpatented mining claim, the claim holder must comply with applicable statutory and regulatory requirements to continue to hold the claim, including, since 1993, an annual maintenance fee. 30 U.S.C. § 28f. Prior to 2012, the maintenance fee was calculated per mining claim, regardless of the claim's size. *See* 43 C.F.R. § 3830.21(d) (2011). As a result, the annual maintenance fee for a 20-acre placer mining claim was the same as the fee for a 160-acre claim. In December 2011, Congress passed the Consolidated Appropriations Act, 2012 (2012 CAA), which changed the maintenance fee for placer mining claims from a "per claim" fee to a "per 20-acre" fee. Consolidated Appropriations Act, 2012, Pub. L. No. 112-74 § 430, 125 Stat. 786, 1047 (2011) (codified as amended at 30 U.S.C. § 28f(a)(2)). In July 2012, BLM promulgated a rule to implement the 2012 CAA. *See* Administration of Mining Claims and Sites, 77 Fed. Reg. 44,155 (July 27, 2012) (codified at 43 C.F.R. pt. 3830).

The Department of the Interior retains authority to determine the validity of mining claims as long as the

government holds title to the land (i.e., any unpatented claim). For certain defects, such as whether the mining claim was properly recorded and maintained, BLM can itself declare a mining claim void. For other defects, BLM may initiate a contest proceeding, which is adjudicated by an administrative law judge (ALJ) within the Department of the Interior, who issues a written decision at the end of the proceeding. Decisions in either case can be appealed directly to the Interior Board of Land Appeals (IBLA). 43 C.F.R. §§ 3830.100; 4.452-9. An IBLA decision is a final agency action for the purposes of judicial review. 43 C.F.R. §§ 4.21(d), 4.403. Judicial review of IBLA decisions may proceed only in district court under the Administrative Procedure Act (APA). 5 U.S.C. §§ 701–06.

## II

In 2005, Mr. Saltzman became an unpatented placer mining claim holder of 103 different 160-acre claims in Arizona under the Mining Law. *Decision*, 2024 WL 1575211, at *2. Prior to the 2012 CAA, Mr. Saltzman was required to pay an annual maintenance fee for each of his 103 claims. But because of the 2012 CAA's new "per 20-acre" fee structure, Mr. Saltzman's fees increased from $14,420 to $115,360 per year. *Id.* at *3.

In December 2013, Mr. Saltzman filed a complaint in the Claims Court, alleging that all 103 of his placer mining claims had been taken without just compensation by the 2012 CAA and requesting compensation in the amount of $219,733,270. *Id.* at *1, *6. The government moved to stay the proceedings so that BLM could determine if Mr. Saltzman's mining claims were valid, and thus whether he had any cognizable property interest that could be taken. *Id.* at *3. The Claims Court granted the stay, and in 2015, BLM began to examine Mr. Saltzman's claims under a lengthy, multi-phase schedule. At Phase I, BLM would assess threshold requirements to determine if Mr. Saltzman complied with location and recordation requirements. *Id.*

at *4.  If any of Mr. Saltzman's mining claims were declared void at Phase I, there would be no Phase II with respect to those claims, and Mr. Saltzman could appeal to the IBLA.  *Id.*  At Phase II, BLM would conduct a more in-depth analysis to determine whether Mr. Saltzman had discovered "valuable mineral deposits," as required by statute, and thus had valid mining claims.  *Id.*; *see also* 30 U.S.C. § 22.  If BLM found any of his claims void at Phase II, it would initiate a contest proceeding, and Mr. Saltzman could appeal an adverse determination by the ALJ to the IBLA.  *Id.* at *4 n.9.  Additionally, Mr. Saltzman could challenge any adverse decision of the IBLA in district court.

In October 2015, under Phase I, BLM found that 96 of Mr. Saltzman's 103 mining claims were void.  *Decision*, 2024 WL 1575211, at *4.  Mr. Saltzman appealed 73 of those 96 claims to the IBLA, which affirmed BLM's voiding of three of the claims and remanded the remaining 70 to BLM.  *See Jon Saltzman*, 195 IBLA 386, 2020 WL 5439293 (Aug. 19, 2020).  BLM moved for the IBLA to reconsider the 70 claims that were remanded.  In September 2023, the IBLA granted BLM's motion, vacated in part its earlier decision, and affirmed BLM's determination that those 70 mining claims were void.  *Jon Saltzman*, 198 IBLA 203, 2023 WL 6797654 (Sept. 29, 2023).

Meanwhile, the seven of Mr. Saltzman's mining claims that were not found void at Phase I proceeded to Phase II.  In June 2019, following a contest proceeding, the ALJ determined that those seven claims were void ab initio.  *Decision*, 2024 WL 1575211, at *4.  Mr. Saltzman appealed that decision, and in June 2024, the IBLA affirmed.  *Jon Saltzman*, 199 IBLA 1, 2024 WL 3508083 (June 26, 2024).

While the two separate IBLA appeals were pending, the Claims Court lifted the stay and ordered the government to file a dispositive motion by October 26, 2023.  *See Decision*, 2024 WL 1575211, at *3.  The government filed a motion to dismiss pursuant to Rules of the United States

Court of Federal Claims (RCFC) 12(b)(1) and 12(c), and the Claims Court granted the motion in April 2024. *See id.* at *3 n.7, *9. At the time of the Claims Court decision, the IBLA had declared all of Mr. Saltzman's mining claims void at Phase I but had not yet ruled on the Phase II claims. The Claims Court concluded first that it lacked subject-matter jurisdiction over Mr. Saltzman's takings claim because he had not established a valid property interest in any mining claim, as BLM had administratively determined (even without an IBLA ruling on the 7 claims BLM had voided at phase II) all 103 of his mining claims to be invalid. *Id.* at *6–7. Alternatively, even if Mr. Saltzman had a valid mining claim, the Claims Court concluded that Mr. Saltzman's complaint must be dismissed because the 2012 CAA did not constitute a taking. *Id.* at *7–8. Accordingly, the Claims Court dismissed Mr. Saltzman's suit for lack of jurisdiction and for failure to state a claim. *Id.* at *9.

Mr. Saltzman timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review dismissals by the Claims Court for lack of jurisdiction de novo. *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002). The plaintiff must establish the Claims Court's jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). Unrepresented plaintiffs are not held to as stringent a pleading standard as represented parties. *See Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (per curiam). However, this principle does not relieve an unrepresented plaintiff of the obligation to establish jurisdiction. *See Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

## I

For the Claims Court to have subject-matter jurisdiction over a takings claim, a plaintiff "must identify a valid property interest." *Shelden v. United States*, 742 F. App'x 496, 500 (Fed. Cir. 2018) (per curiam) (cleaned up) (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212–13 (Fed. Cir. 2005)); *see also CRV Enters. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010) ("It is well established that 'only persons with a valid property interest at the time of the taking are entitled to compensation.'" (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001))).

In *Aulston v. United States*, 823 F.2d 510 (Fed. Cir. 1987), the Claims Court dismissed a takings claim for lack of jurisdiction after the IBLA affirmed the government's ownership of the property at issue. *Id.* at 511. We determined that the Claims Court "properly held that it lacked the power to decide appellants' Fifth Amendment taking case in its present procedural posture in view of the [IBLA's] prior adjudication that appellants had no ownership rights." *Id.* We further explained that the "IBLA decision marked the exhaustion of appellants' administrative remedies and constituted final agency action," making it "clear that the Claims Court correctly decided that . . . [it] lacked jurisdiction at this time to entertain appellants' taking suit." *Id.* at 513–14.

Mr. Saltzman's case is indistinguishable from *Aulston*. The IBLA has issued three final determinations collectively invalidating 80 of Mr. Saltzman's mining claims. *See Jon Saltzman*, 195 IBLA 386, 2020 WL 5439293 (Aug. 19, 2020) (affirming BLM's 2015 decisions that three mining claims were void); *Jon Saltzman*, 198 IBLA 203, 2023 WL 6797654 (Sept. 29, 2023) (affirming BLM's 2015 decisions that 70 mining claims were void); *Jon Saltzman*, 199 IBLA 1, 2024 WL 3508083 (June 26, 2024) (affirming the ALJ's 2019 decision that seven mining claims were void ab

initio).[1]  As to the remaining 23 of Mr. Saltzman's mining claims, BLM determined they were void at Phase I, and Mr. Saltzman declined to appeal them to the IBLA or a judicial forum.  Accordingly, the Department of the Interior has determined that each of Mr. Saltzman's 103 mining claims were invalid, leaving Mr. Saltzman without a cognizable property interest and the Claims Court without subject-matter jurisdiction over his takings claim.

Mr. Saltzman's arguments on appeal are unconvincing. Initially, he states that his "[m]ining claims were valid." Appellant's Informal Br. 4.  To the extent Mr. Saltzman is challenging the merits of the Department of the Interior's decisions, "[n]either the Claims Court nor this court is empowered to review IBLA decisions." *Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303, 1310; *see also Aulston*, 823 F.2d at 514 ("[W]here the administrative agencies of the Interior Department have decided that the United States (not the claimants) own the disputed property, the Court of Claims could not review or overturn that administrative determination even though that court indisputably had jurisdiction over 'taking' claims.").

Mr. Saltzman also appears to argue that BLM converted his mining claims to patented claims.  Appellant's Informal Br. 6 ("Reason is that the subject claims were converted to fee claims by BLM when they transferred the claims to Saltzman."); *see also id.* at 9, 12.  He is incorrect. Since 1994, Congress has imposed a moratorium that bars BLM from processing new mining patent applications.  *See* Consolidated Appropriations Act, 2024, Pub. L. No. 118-42,

---

[1]    To the extent that Mr. Saltzman argues the Claims Court should have deferred ruling on the government's dispositive motion until the pending IBLA case was resolved, that argument is now moot.  The IBLA has issued its final determination on the last of Mr. Saltzman's seven mining claims, affirming the BLM that they were void.

§ 404, 138 Stat. 25, 284. All of Mr. Saltzman's unpatented claims were located after 2001.

Additionally, Mr. Saltzman asserts that BLM's actions are prohibited by the statute of limitations. *See, e.g.*, Appellant's Informal Br. 4, 6, 8. But there is no statute of limitations barring the Department of the Interior's validity determinations. The Supreme Court has long recognized that, with respect to unpatented mining claims, the government "does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void." *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 337 (1963) (citation omitted).

Finally, Mr. Saltzman is incorrect when he contends that BLM validated his mining claims through its acceptance of his required payments. *See, e.g.*, Appellant's Informal Br. 6–11, 20. Acceptance of required fees does not render a mining claim valid. *See Durand v. Haaland*, No. 20-cv-338, 2021 WL 4191972, at *4 (D.D.C. Sept. 15, 2021) ("[B]y law, the BLM's acceptance of fees and filings indicates nothing about the validity of the underlying claims."), *aff'd*, No. 21-5222, 2022 WL 2714552 (D.C. Cir. July 13, 2022) (per curiam); 43 C.F.R. § 3832.11(b); *see also* 43 C.F.R. § 3830.22(b)(2) (allowing refunds of fees on claims later determined to be "void" when paid).

## II

But this is not the end of Mr. Saltzman's journey. As this court has noted, "judicial review of IBLA decisions may proceed only in district court under the APA." *Taylor Energy*, 990 F.3d at 1310. Under 28 U.S.C. § 2401(a), there is a six-year deadline to seek judicial review of an IBLA decision. Both the Claims Court and the government were well aware of this. *See Decision*, 2024 WL 1575211, at *6 n.12 ("Importantly, the [c]ourt raised potential proceedings in district court multiple times with the parties, but Mr. Saltzman has not challenged Interior's decisions in district

court."); Appellee's Br. 22 n.11 ("Mr. Saltzman has a right to seek further review in district court of the IBLA decisions—a right he has never stated that he intends to utilize").

Now, however, Mr. Saltzman has chosen to exercise that right. In October 2023, Mr. Saltzman moved for reconsideration of the IBLA's September 2023 decision, wherein the IBLA affirmed BLM's determination that 70 of the mining claims were void. The IBLA denied Mr. Saltzman's motion for reconsideration in October 2024. Then, on January 6, 2025, Mr. Saltzman filed a complaint in the United States District Court for the District of Arizona challenging that denial and requesting that the district court find those 70 claims valid. Complaint, *Saltzman v. United States Dep't of the Interior*, No. 25-CV-00020 (D. Ariz. Jan. 6, 2025), ECF No. 1.

If Mr. Saltzman succeeds in obtaining a reversal, then the Claims Court would have jurisdiction to review his takings claim on the merits for those valid mining claims. *Aulston* is instructive here too. In *Aulston*, we noted that the appellants "must first obtain a proper reversal of the adverse IBLA ruling" before continuing to "press their taking claim before the Claims Court." 823 F.2d at 513. Although we agreed with the Claims Court that, "given the present procedural posture," it "lacked jurisdiction at this time to entertain appellants' taking suit," we nonetheless vacated its dismissal "pending resolution of the [validity] issues in a district court proceeding." *Id*. at 514. Because the judicial resolution of the threshold property rights question could take considerable time, the *Aulston* court aptly observed that an affirmance of the dismissal "enhances to a near certainty the risk that the statute of limitations will run on appellants' taking claim and extinguish their rights." *Id*.

Mr. Saltzman potentially faces the same risk. Mr. Saltzman filed his original suit in the Claims Court in

2013, alleging that the 2012 CAA constituted a taking. Under the Tucker Act, a takings claim must be filed within six years after the claim accrues. 28 U.S.C. § 2501. Depending on the date of accrual, dismissing Mr. Saltzman's suit now "may prove lethal" to his takings claim.[2] *Aulston*, 823 F.2d at 514. Accordingly, while the Claims Court currently lacks jurisdiction over Mr. Saltzman's takings claim, a stay is warranted, as it was in *Aulston*. This allows Mr. Saltzman to pursue his appellate rights and potentially secure a reversal of the adverse IBLA determinations, while preserving his ability to pursue a valid takings claim before the Claims Court.

Because the Claims Court currently lacks jurisdiction, we do not decide whether it correctly dismissed Mr. Saltzman's takings claim for failure to state a claim.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *vacate*. As in *Aultson*, we "direct the Claims Court to hold [Mr. Saltzman's] taking claim on its docket in suspension

---

[2]    We note that the accrual standard might solve the untimeliness problem. In *Reoforce, Inc. v. United States*, we explained that a takings claim "will not accrue until the claim is ripe." 853 F.3d 1249, 1264 (Fed. Cir. 2017) (citation omitted). Specifically, in the context of unpatented mining claims, we determined that a takings claim did not ripen until the claim holder could "demonstrate the existence of a legally cognizable property interest," which was after the validity determinations concluded. *Id.* at 1265. That said, we think it is best not to decide that question here. The more appropriate course of action is to stay the case at the Claims Court while Mr. Saltzman challenges the IBLA decisions.

for such time as is reasonably necessary for [Mr. Saltzman] to challenge the IBLA decision in a district court, and, if successful there, to return promptly to the Claims Court." *Id.* at 514.

## VACATED

### Costs

Costs to appellant.