Mae BOURGEOIS

v.

The UNITED STATES.

No. 168–75.

United States Court of Claims.

Nov. 17, 1976.

As Amended on Denial of Rehearing and Rehearing En Banc
April 1, 1977.

sections. Lot No. 1 of Section 4 contained 47.12 acres; Lot No. 2 of Section 4, 53.30 acres; Lot No. 1 of Section 5, 43.89 acres; Lot No. 2 of Section 5, 30.0 acres, and Lot No. 3 of Section 5, 43.0 acres. This survey can perhaps be better explained by the following graphic illustration:

Seymour Kraus, Southfield, Mich., atty. of record, for plaintiff.

Michael K. Murray, Washington, D. C., with whom was Asst. Atty. Gen., Peter R. Taft, Washington, D. C., for defendant.

Before NICHOLS, KASHIWA and KUNZIG, Judges.

KUNZIG, Judge.

Plaintiff in this Fifth Amendment taking case of first impression attempts to recover the value of an island allegedly appropriated by the Government in 1971 in a landlocked, non-navigable lake. In her motion for summary judgment, plaintiff asks the court to find that, as a matter of law, she held title to the island until its appropriation by the Government. By cross-motion, defendant would have us determine that plaintiff did not hold title to the island and cannot recover for an alleged taking. To the extent outlined below, we hold for plaintiff.

The history of the present dispute can be traced to 1846. In that year, Michigan Township No. 26 N was first surveyed. The surveyor meandered a lake now known as Jewell Lake. Unfortunately, the disputed island was omitted from the survey and the 1846 Plat. The 1846 survey divided the land adjoining the lake into five lots in two

On January 15, 1866, defendant, pursuant to the Bounty Land Act of 1855 granting land to war veterans, patented Lots No. 1 and 2 of Section 4 to Wm. E. Dodge as assignee of Elizabeth Phillips, the widow of a War of 1812 veteran. The patent was for 100.42 [47.12 + 53.30] acres of land. However, as the island was omitted from the survey and the Plat, it was also omitted from the patent. At about the same time, defendant also patented the remainder of the shoreland without reserving title to the island.

In 1939, plaintiff and her now deceased husband purchased Lot No. 1 of Section 4, originally patented to Dodge in 1866. Plaintiff claims and defendant does not contest, that upon her husband's death, she acceded to entire ownership of this interest. Although the record is somewhat unclear as to the grantor, it appears that in 1939 defendant reacquired Lot No. 2 in Section 4, either from plaintiff or from plaintiff's grantor. Defendant states that it received the lot from "Milton L. Whiteman."

In 1958 the island was surveyed for the first time and the official Plat was accepted on August 4, 1959. The island appears on this Plat as Lot No. 3 of Section 4 (5.54 acres) and Lot No. 4 of Section 5 (1.22 acres). The following illustration shows the redrawn Plat:

[Lot 4]  [Lot 3]

Lot 1    Lot 1

Lot 2    Lot 2

Lot 3

Section 5    Section 4

In 1971 the Government "posted" the island as Government land, and plaintiff began her attempt to vindicate her asserted rights to the island.

■ Plaintiff now moves for summary judgment, arguing that title to the island passed at the time of the 1866 patents and that defendant, by its action in 1971, has taken her land without just compensation. Defendant counters in its cross-motion that it never parted with title to the island, has owned it continuously since 1846 and before

and, accordingly, has not taken any land belonging to plaintiff.[1]

We hold that defendant transferred title to the island when it patented the lands on shore in 1866. Accordingly, we hold that insofar as plaintiff can prove her ownership of Lot No. 1 in Section 4, she is entitled to recover.[2]

Unquestionably, in 1866 defendant passed title to all lands adjoining Jewell Lake, a land-locked non-navigable body of water. Because the patents to such grants are silent as to the island currently in dispute, and the clear intent of the grantor is at best ambiguous, the court must fathom the intent of the grantor at the time the shoreland was ceded. As far as can be determined, this question is one of first impression.

■ We start with the general proposition that in interpreting the intent of the Government when reviewing a federal grant, federal, not state law controls. *Bo-*

---

1. In its answer, the Government raises defenses which are not before the court on these cross-motions for summary judgment. However, one assertion by defendant—that this suit is really one to quiet title and therefore within the exclusive jurisdiction of the district courts under 28 U.S.C. 2409a and 1346(f)—must be addressed, as it strikes at the power of this court to hear the action.

28 U.S.C. 2409a (enacted in 1972) states that it does not affect actions which could be brought under 28 U.S.C. 1346 or 28 U.S.C. 1491. *Cf. Manning v. United States*, 200 Ct.Cl. 739 (1972). Under 28 U.S.C. 1491, the Court of Claims has long had jurisdiction over Fifth Amendment taking cases. *Causby v. United States*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). This court is not denied jurisdiction now, simply because there is a quiet title issue involved in determining entitlement to just compensation *vel non*. As the Supreme Court stated in *Malone v. Bowdoin*, the Court of Claims is an appropriate forum where plaintiff can try title by seeking just compensation for the taking of land by the United States, 369 U.S. 643, 647 n. 8, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). (Note that *Malone* preceded the enactment of 28 U.S.C. 2409a by ten years.) *Carlson & Carlson v. United States*, 208 Ct.Cl. 1022, 1023 (1976), establishes the vitality of *Malone* in a post-1972 setting.

If plaintiff had brought suit to be restored possession of her land, perhaps the issue would be different and 28 U.S.C. 2409a might require

this suit be brought in the district court. But this is not a suit for possession. It is a *just compensation action* and thereby within the historical jurisdiction of the court. To hold otherwise would allow defendant in its answer to determine the situs of an action by alleging governmental ownership. This we decline to do.

Judge Kashiwa, in dissent, makes much of the fact that plaintiff was allegedly "agreeable" to transfer the cause to a district court. We question that plaintiff would "rather" be in district court. When the dissenting judge asked at oral argument whether plaintiff's counsel would favor a return of the case to the district court *were the Court of Claims to determine it had no jurisdiction,* counsel indicated "[u]nder those conditions, your Honor, we would be satisfied to transfer the case to the district court."

In any event, in open court at oral argument, counsel for the government clearly conceded "as between the parties, this court has jurisdiction to decide title, the issue which is now present. I believe that this court can decide title."

2. We do not decide herein that plaintiff has proven her ownership of Lot No. 1, nor do we make any finding as to the value of the island, nor any conclusion as to the method of dividing ownership of the island among the various owners of shoreline property.

*nelli Cattle Co. v. Arizona,* 414 U.S. 313, 320–21, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973); *Hughes v. Washington,* 389 U.S. 290, 292, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967); *Borax Consolidated Ltd. v. Los Angeles,* 296 U.S. 10, 22, 56 S.Ct. 23, 80 L.Ed. 9 (1922). Moreover, as the statutes are silent as to the construction of federal patents, such interpretation, of necessity, involves an analysis of federal common law.

A survey of federal cases reveals that there are two distinct lines of demarcation in evaluating title to islands when the shoreland is patented: navigable water cases, and non-navigable water cases. Based on the briefs filed in the instant case, and the oral argument, it appears to be uncontroverted that Jewell Lake is non-navigable.

In the navigable water cases, ownership in the navigable stream *beds* passed to the state at the time of admission of a state into the Union both under federal statute and as a concomitant of state sovereignty. *Bonelli Cattle Co., supra.* However, where the Federal Government patents shoreland along navigable waters without denoting an intent to pass title to off-shore *islands,* it has been held that title to the islands remains with the Federal Government. *Scott v. Lattig,* 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490 (1913).

■ In the non-navigable waters area, the situation becomes quite different. Insofar as the title to non-navigable water *beds* is concerned, federal law looks to the law of the state in which the land lies or common law, if no clear intent is expressed in the patent. *Oklahoma v. Texas,* 258 U.S. 574, 594–95, 42 S.Ct. 406, 66 L.Ed. 771 (1922); *Hardin v. Jordan,* 140 U.S. 371, 384, 11 S.Ct. 838, 35 L.Ed. 428 (1891); *Mitchell v. Smale,* 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442 (1891).

Were there no federal interest whatsoever in this matter, the solution would be clear. Both parties admit that *Michigan* law is to the effect that a conveyance of shoreland on a non-navigable body of water will pass title to unsurveyed islands in the body of water to the grantee of the shore-

line property. *Ottawa Shores Home Owners' Assn. v. Lechlak,* 344 Mich. 366, 73 N.W.2d 840 (1955); *Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co.,* 102 Mich. 227, 236, 60 N.W. 681, 684 (1894); *Webber v. Pere Marquette Boom Co.,* 62 Mich. 626, 30 N.W. 469 (1886); *Fletcher v. Thunder Bay River Boom Co.,* 51 Mich. 277, 16 N.W. 645 (1883). *Cf. Grand Rapids & IR Co. v. Butler,* 85 Mich. 246, 48 N.W. 569, aff'd, 159 U.S. 87, 15 S.Ct. 991, 40 L.Ed. 85 (1895).

But we have said above that when reviewing a *federal* grant *federal* law applies, and determining intent involves an analysis of *federal common law.*

■ It is clear that given no indicia of patentor intent, if this were a *navigable water "bed case,"* the bed would belong to the state. If it were a navigable water "island case," the island would belong to the Federal Government. If it were a non-navigable water "bed case," the bed would belong to the shore owners in "pie-shaped" fashion to the center of the body of water under federal common law which looks to the law of the state (in this case, Michigan). *Grand Rapids Ice & Coal Co., supra.* However, this is where the clarity ends, for the parties have not cited, nor can we discover, any non-navigable water "island cases," where intent of the Federal Government in patenting shoreland is not expressed.

Obviously, plaintiff attempts to rely on the non-navigable water "bed cases" under which doctrine she would have obtained title to at least part of the island in question under federal law and the law of Michigan via the 1866 federal grants to Wm. E. Dodge. On the other hand, defendant urges application of the navigable water "island cases" under which it has been held that the Government retains title to islands despite the patent of shorelands. Given the fact that there are no non-navigable "island cases," we must determine which analogy is better suited to the instant situation.

As an initial matter, we take note that the intent of the Government (to grant or retain the islands in its 1866 patent) cannot

be fathomed. The grant fails either to convey or to reserve the island. The grant itself specifies the acreage of the patent based upon the shoreland only, but this is more likely than not due to the fact that the island was inadvertently omitted from the 1846 Plat. From the size of the island (6.76 acres), its relative remoteness and rather small value in 1866, it can, at best, be inferred that in 1866, neither the Government nor the patentee cared much about who held title to the island. Finally, if anything, the fact that the Government patented all the other land around the lake in 1866 denotes the probability that if it had been aware of the island's existence, it would have patented the island also.[3] In total, the factors bearing on intent produce no definitive result. Accordingly, we must fashion a rule to construe title to islands in non-navigable water cases.

Given the choice between the navigable water island cases and the non-navigable water bed cases, *the best analogy is the non-navigable water bed law.* To reach this result we concentrate on the fact of accessibility, particularly with reference to the time of the grant. In the navigable water island cases, the Government could, with impunity, cede title to shoreland while retaining access by the navigable water route.

▮ The non-navigable water bed situation presents a quite different picture. Here, where the land bordering a non-navigable body of water is ceded, the beds pass (unless the intent of the grantor is expressly stated to the contrary) according to state law. Under Michigan law, title to the beds passes to the shoreland owners. It would make little sense for the Government to pass title to all shorelands without reserving access easement to islands and expect to be able to use either the water or the beds,

particularly in 1866 before the advent of air travel.

Thus it is equally obvious in the non-navigable water situation that a grant which passes shoreland and beds to a patentee should also pass title to midstream islands absent a clear expression of contrary intention by the grantor. In the instant case, having ceded all of the shoreland around Jewell Lake, and having failed to reserve an easement, there would have been absolutely no way for defendant to use the island in question.

▮ Accordingly, under federal common law, we hold that if the intent of the grantor is ambiguous and the Government grants shoreland along non-navigable waters, it also passes title to islands according to the law of the state in which the property is located. Therefore, in the instant case, under Michigan law the 1866 patent of Lot No. 1 of Section 4 to Wm. E. Dodge also passed title to at least a portion of the island whose title is currently in issue. Such grant gave Dodge title to underwater beds and the island as measured in "pie-shaped" fashion. *Grand Rapids Ice & Coal Co., supra.* Thus, the grant included beds and island land lying in the angle formed by drawing a line from the center of Jewell Lake to the northwesternmost point of Lot No. 1 on the shoreline, and another line from the center of the lake to the southwesternmost point of Lot No. 1 on the lakeshore, according to the following illustrated approximation:

If plaintiff can adequately establish that she has succeeded to Dodge's ownership interests in Lot No. 1, she will be able to recover for defendant's 1971 taking[4] of that portion of the island belonging to her.

---

**3.** If the Government had not intended to patent the island, then it probably would have reserved an approach to the lake. This it did not do.

**4.** Evidenced by government posting of the property as government land and the letter from the General Counsel's office of the Depart-

ment of Agriculture to plaintiff's attorney pronouncing the island to be federal land. In addition to these acts (conceded by the Government), plaintiff alleges that the Government ordered her off the property, excluded her son, and refused to allow her to install electricity on the island.

On remand, the following items, among others, remain to be resolved: (1) Plaintiff's title to Lot No. 1, Section 4, Township No. 26 N, Range TE, Michigan Meridian, Michigan; (2) the center point of Lake Jewell; (3) the island acreage owned by plaintiff, if any, taken by defendant in 1971, and (4) the value of the island (and plaintiff's portion of the island) appropriated by defendant without just compensation.

Accordingly, plaintiff's motion for summary judgment is granted, defendant's cross-motion for summary judgment is denied, and the case is remanded to the Trial Division for further proceedings consistent with this opinion.

KASHIWA, Judge (dissenting):

The majority opinion briefly discusses in its footnote 1 the question of jurisdiction of this court over plaintiff's cause of action. I do not agree with the majority's conclusion for reasons hereafter stated.

As its third defense, defendant specifically alleges in its answer to the amended petition as follows:

> This Court is without jurisdiction of this cause because this is in fact an action to adjudicate a disputed title to real property in which the United States claims an interest and as such is within the exclusive original jurisdiction of the District Courts pursuant to 28 U.S.C. sections 2409a and 1346(f).[1]

The sections of statutes referred to in the margin were enacted by Pub.L. 92–562, 86 Stat. 1176 (October 25, 1972), entitled "AN ACT to permit suits to adjudicate certain real property quiet title actions."

Plaintiff's initial civil action in the Circuit Court for the County of Alcona, State of Michigan, which prayed that the defendant, a District Ranger in the United States Forest Service, be enjoined from exercising any ownership interest in the island in question, was removed to the United States District Court, Eastern District of Michigan. The District Court should have considered the action "essentially a quiet title action." *County of Bonner v. Anderson*, 439 F.2d 764 (9th Cir. 1971). Upon plaintiff's motion for rehearing which was denied on September 23, 1974, the District Court should have retained jurisdiction, reversing its earlier dismissal which was on grounds of sovereign immunity. As aforementioned, Pub.L. 92–562 was enacted October 25, 1972.

Although plaintiff filed her petition in this court on May 16, 1975, plaintiff would rather be in District Court. At the time of oral argument before this court, plaintiff's attorney responded in the affirmative to my question as to whether he would like to have this case transferred to the United States District Court for the Eastern District of Michigan, Northern Division.

In dismissing defendant's jurisdictional defense, the majority points to, and I am aware of, our order entered in *Carlson & Carlson v. United States*, 208 Ct.Cl. 1022 (1976). That order, however, is not contrary to my views herein. *Carlson* dealt with an absolute exclusion under 28 U.S.C. § 2409a to restricted Indian lands in which title is held by the United States. See *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975). Section 2409a specifically provides:

1. 28 U.S.C. § 1346(f) reads as follows:
   "(f) The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."
   28 U.S.C. § 2409a reads as follows:
   "(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346, 1347, 1491, or 2410 of this title, sections 7424, 7425, or 7426 of the Internal Revenue Code of 1954, as amended (26 U.S.C. 7424, 7425, and 7426), or section 208 of the Act of July 10, 1952 (43 U.S.C. 666)."

\* \* \* This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections \* \* \* 1491 \* \* \* of this title \* \* \*.[2]

As demonstrated by plaintiff's initial petition filed in District Court, and as raised by defendant's jurisdictional defense, this case is not correctly a claim against the United States founded upon the Fifth Amendment. Rather, in effect, this is a quiet title action which should have been instituted against the United States pursuant to § 2409a. The allegation made by the plaintiff of interference with possession caused by the defendant merely posting a sign and excluding on one instance plaintiff's son from the island, is not sufficient to support an involuntary taking. The sign placed on the island is no more significant a taking than the letter of November 9, 1971, to plaintiff from the United States Department of Agriculture that defendant considered the island to be "Federal land administered by the United States Government." Such a procedure does not amount to a direct and actual intrusion. At most, the majority can point to only a nebulous or proposed taking by defendant of plaintiff's property. The character of this invasion does not constitute a taking of the property in issue. See *Pitman & Pitman v. United States,* No. 31-76 (Order entered October 21, 1976); *Hilkovsky v. United States,* 504 F.2d 1112, 1113, 205 Ct.Cl. 460, 464 (1974); *Woodland Market Realty Co. v. Cleveland,* 426 F.2d 955, 958 (6th Cir. 1970). Therefore, § 1491 is inapplicable and § 1346(f) is controlling, giving exclusive original jurisdiction to the District Court in order to quiet title to interests in the island real property in which an interest is claimed by the United States.

The majority seems to rely solely on the form of the present petition and the above-quoted sentence of § 2409a to solve the jurisdictional question raised by defendant. The problem is far from being that simple. A careful examination of the purpose of the legislation together with the other provisions of Pub.L. 92-562 must be made.

The purpose of Pub.L. 92-562 as stated in the Legislative History of the Act, 3 U.S. Code Cong. and Adm.News 4547 (1972), is to remedy the troublesome situation caused by decisions applying the defense of sovereign immunity. *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). But see *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882). Although the plaintiff in *Malone* was denied relief under the defense of sovereign immunity, the majority of the Court in *Malone* stated 369 U.S. at page 647, footnote 8, 82 S.Ct. at page 983;

\* \* \* Unlike the situation in the *Lee case* [106 U.S. 196, 1 S.Ct. 240, 27 L.Ed 171], there has been at all relevant times a tribunal where the respondents could seek just compensation for the taking of their land by the United States. That tribunal is the Court of Claims. *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 1064, 90 L.Ed. 1206.

The majority herein relies on the Court's footnote reference to the remedy in the Court of Claims. But it is well to note that *Malone* preceded Pub.L. 92-562 by 10 years. The Department of Justice realized the unjustness of the sovereign immunity rule and sponsored Pub.L. 92-562.[3] The unjustness as it is applicable to plaintiff in the present suit is well expressed by the dissenting judges in *Malone.* Justice Douglas, writing the dissent, pertinently stated as follows:

The Court is quite correct in saying that all of our decisions in this field cannot easily be reconciled; and the same

---

**2.** 28 U.S.C. § 1491 as pertinent herein reads as follows:

"The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any expressed or implied contract with the United States, \* \* \*."

**3.** See Legislative History, *supra.*

will doubtless be true if said by those who sit here several decades hence. The reason the decisions are not consistent is that policy considerations, not always apparent on the surface, are powerful agents of decision. Thus the *Larson* case was a suit for specific performance of a contract to sell coal, a matter that courts had long left to damage suits. As I said in my separate concurrence in that case, any other rule would "clog" government procurement "with intolerable burdens." 337 U.S., at 705, 69 S.Ct. at 1469.

Ejectment, on the other hand, is the classic form of action to try title. It takes place in the locality where the land is located. No judges are better qualified to try it than the local judges. It is a convenient and ready form of remedy for possession of land. Moreover, the United States, not being a party, is not bound by the state court decree. If it is aggrieved by the state or federal court ruling on title, it can bring its arsenal of power into play. Eminent domain—with the power immediately to take possession—is available.

If, however, the citizen must bow to the doctrine of sovereign immunity, he is precluded from any relief except a suit for damages under 28 U.S.C. § 1346(b) or 28 U.S.C. § 1346(a)(2), or 28 U.S.C. § 1491. This places the advantage with an all-powerful Government, not with the citizen. He may, as the Court says, go into court and get the value of his property. *But he does not get his property, even though we assume, as we must, that the Government is not the rightful claimant.* [Emphasis supplied.] 369 U.S. at 650–651, 82 S.Ct. at 985.

And, similarly, in *Larson v. Domestic & Foreign Corp., supra,* 337 U.S. at 722–723, 69 S.Ct. at 1478. Justice Frankfurter stated:

\* \* \* When there is such a special remedy the suit against the officer is barred, not because he enjoys the immunity of the sovereign but because the sovereign can constitutionally change the traditional rules of liability for the tort of the agent by providing a fair substitute.

*Crozier v. Fried,* 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771; *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303. *But the general statute permitting suit in the Court of Claims in certain instances against the Government is not a statute that provides that remedies otherwise at the plaintiff's command are to be displaced.* A holding that the availability of an action for monetary damages in the Court of Claims against the United States prevents a suit at law, or, if the necessary requisites for equity jurisdiction are present, in equity, against the governmental agent, would be as novel as it is indefensible in the light of the settled course of decisions. Indeed, this argument is not novel; it has been explicitly negatived in at least two cases. See *Sloan Shipyards Corp. v. United States Fleet Corp.,* 258 U.S. 549, 567, 568, 42 S.Ct. 386, 388, 66 L.Ed. 762; *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209. [Footnote omitted.] [Emphasis supplied.]

As pointed out in the two passages from the dissenting opinions of the Court above quoted, the remedy available in the Court of Claims under section 1491 is not truly adequate in that:

\* \* \* he [plaintiff] does not get his property, even though we assume, as we must, that the Government is not the rightful claimant.

Pub.L. 92–562 is a well-drafted legislation and it is my opinion that the legislation is intended to correct not only the harsh results of the defense of sovereign immunity by the waiver of such defenses but it provides a quiet title proceeding to erase the inequity of forced relinquishment of title to Government under the Court of Claims procedure to which Justice Douglas rightly protested.

At this point I believe it is significant to note that an action brought under § 1491 is subject under 28 U.S.C. § 2501 to a six-year statute of limitations but when the same action is filed under the quiet title section, the period of limitations is 12 years. Section 2409a(f) provides as follows:

(f) Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

The majority's opinion would permit the application of the six-year period of limitations if the quiet title action is brought in this court, but a 12-year period would be applicable to the same cause of action if the action is brought in the Federal District Courts. Such a construction which leads to two conflicting periods of limitation is absurd. We have held that absurd results of interpretation of a statute should be avoided. *Kantor v. United States,* 205 Ct.Cl. 1 (1974); *Tlingit and Haida Indians of Alaska v. United States,* 177 F.Supp. 452, 147 Ct.Cl. 315 (1959); *Jennings v. United States,* 168 F.Supp. 781, 144 Ct.Cl. 28 (1958). It is submitted that this absurdity can be resolved by construing Pub.L. 92–562 to mean that after its enactment, actions to quiet title like the present action must be brought in the Federal District Courts and not in the Court of Claims. It is submitted that where there are several related statutes, they should be so construed, if possible, by a fair and reasonable interpretation so as to give full force and effect to each and all of them. *United States v. American Trucking Association,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939); *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936); *Jamerson v. United States,* 401 F.2d 808, 810, 185 Ct.Cl. 471, 475 (1968); *Frizzell v. United States,* 123 Ct.Cl. 337, 341 (1952).

Another consideration which I consider important is that in any taking case, the court must first decide whether the plaintiff owns title to the land allegedly taken. This title issue as a preliminary matter is more appropriately litigated in a quiet title proceeding brought in a District Court, wherein all parties interested in the land can be made parties to the case. Because there are various owners to lots surrounding the island at issue, they should all be heard in one action.

It is also of interest that Pub.L. 92–562 further amended 28 U.S.C. § 1402 by adding subsection (d), which reads as follows:

(d) Any civil action under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States shall be brought in the district court of the district where the property is located or, if located in different districts, in any of such districts.

In this respect I agree with Justice Douglas' statement that "No judges are better qualified to try it [real property title] than the local judges." *Malone v. Bowdoin, supra,* 369 U.S. at 650, 82 S.Ct. at 985. Where the subject matter of the litigation is real property, it appears equitable that suit be brought and tried in a court near the situs of the property. This consideration is further strengthened by the fact the majority recognized that the State law, not the Federal law, of real property applied to decide some of the basic issues presented. In addition, the District Court has jurisdiction to resolve the complete matter in one proceeding and to provide a remedy under § 2409a.

I, therefore, dissent from the majority opinion that this court has jurisdiction over this case.

Furthermore, where, as in this case, defendant objects, for meritorious reasons as stated in this dissent, to the jurisdiction of this court and plaintiff is agreeable to a transfer, this court should, under 28 U.S.C. § 1506, transfer the action to the United States District Court for the Eastern District of Michigan.