Patrick S. MARTIN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–658L.

United States Court of Federal Claims.

Jan. 28, 1994.

Carol E. Dinkins, Houston, Texas, Attorney of record, for plaintiff, with whom were Sharon M. Mattox and Kimberly Z. Lesniak.

John S. Gregory, Washington, D.C., with whom were Acting Assistant Attorney General Lois J. Schiffer for defendant. Robert L. Behrens, Galveston, Texas, of counsel.

## ORDER

LYDON, Senior Judge:

Patrick Martin filed a complaint in the United States Claims Court on July 17, 1990, seeking a declaration that the defendant, acting through the Army Corps of Engineers, dumped spoilage on his property and thereby effected a taking, entitling him to reasonable compensation. The government pleaded a number of affirmative defenses and subsequently filed a motion to dismiss the complaint. This motion is based on the assertion that the Corps' dumping of spoilage on Martin's property was legal because it acted on the authority of a properly recorded easement. Martin opposes this motion, contending the easement is invalid and defective. For the reasons explained herein, the court grants the government's motion and dismisses the complaint with prejudice.

## FACTS

In January 1985, Patrick Martin purchased from John R. Freeland a 23.67 acre tract of land along the Laguna Madre Bay in Texas. This piece of property is located in or near the city of Port Isabel, and constituted the approach to the Queen Island Causeway which connected Port Isabel to South Padre Island before a connecting bridge opened in 1975. The property at issue in this case is a peninsula that was artificially created in 1953–54 by dredging and filling when the Causeway was built. Before this time, the tract of filled land was part of the submerged bed of the Laguna Madre bay in the navigable waters of the United States.

On August 21, 1947, when this property was still submerged underneath the bay, the Arroyo Colorado Navigation District of the State of Texas conveyed to the United States a "Spoil Disposal and Right-of-Way Easement Deed". The property interest conveyed by this deed, which will be referred to throughout this order as "the easement", was sought by the United States Army Corps of Engineers, Galveston District ("the Corps") to facilitate "the extension and construction of the Louisiana–Texas Intercoastal Waterway from Corpus Christi, Texas to the Mexican Border in Corpus Christi Bay and Lagu-

na Madre." The deed was properly recorded in the land records of Cameron County on November 19, 1947 under County Clerk's File No. 20258 (vol. 424, pp. 276–278). The State of Texas had previously conveyed all rights and easements appurtenant to this property to the Arroyo Colorado Navigation District by statute. Texas further statutorily provided that navigation districts that owned interests in land desired by the United States to further the goals of any congressional legislation in aid of navigation, flood control or improvement of water courses were empowered to convey those interests to the United States. Tex.Rev.Stat.Ann. art. 8263i.[1]

In 1975, Freeland acquired title to the subject property from the State of Texas. On January 11, 1985, Freeland conveyed the property to Martin, who apparently was interested in building a marina there. The deed was recorded that day in the office of the County Clerk. The government claims that when Freeland held title to the tract he held it subject to the easement described above, and that when Freeland conveyed the tract to Martin, Martin took subject to the easement. Martin claims he did not take subject to the easement because the easement was invalid, and even if valid, he had no actual or constructive notice of it. In any event, it is undisputed that Freeland did not tell Martin prior to the conveyance that the property was subject to an easement held by the Corps.[2] Similarly, Martin's title company, Lawyer's Title Insurance Corporation, failed to list the easement as a cloud on Martin's title.

It appears that the easement obtained by the United States effects a large area in Texas, and within this area of the state is a geographical area measuring some 76 acres that has been designated by the Corps as Disposal Area No. 240. At oral argument, counsel for plaintiff indicated that the portion of Disposal Area No. 240 that intersected with the 23.67 acre tract measured approximately seven acres.

On September 6, 1985, Marcos De La Rosa, Chief of the Regulatory Branch of the Corps' Galveston District, informed Martin that Edward Hummel had been assigned to process Martin's application for a permit to dredge and construct piers for a marina at a site on the 23.67 acre parcel of property that Martin had recently purchased. The Corps was concerned that Martin's plans would be inconsistent with its use of Disposal Area 240. Expressing their concerns, on May 9, 1986 the Corps asked Martin to "submit revised plans for his project depicting the disposal area limits and the 1,000–foot setback distance from the causeway...."

Martin complied with the Corps' request on July 28, 1986 by submitting revised site plans which stated that "no construction

1. Article 8263i of the Texas Code provides in pertinent part:

Section 1. Any navigation district ... is hereby granted and conveyed the free and uninterrupted use, liberty, and easement in and to all the rivers, streams, bayous, arroyos, resacas, lakes, lagoons, bays, arms of the sea, beds, banks, or shores thereof, mud flats or other lands covered or partly covered by the waters of any of the lands owned by the State of Texas within the county or counties in which such district or districts are located and within the adjoining counties thereto, and along the route of any waterway, a part of which lies with such district, in order to connect such waterway with the Louisiana and Texas Inter–Coastal Waterway now completed to Brownsville, Texas, for the purpose of navigation, conservation, reclamation, and flood control, in aid of navigation....

Sec. 2. When any such navigation district may be the owner of any property, land, or interest in land desired by the United States of America to enable any department or establishment thereof to carry out the provisions of any act of Congress in aid of navigation, flood control, or improvement of water courses in aid of navigation, any such district of this state is hereby authorized and empowered, upon request by the United States through its proper officers for conveyance of title or easement to any part of such property, land, or interest in land, which may be necessary for the construction, operation, and maintenance of such works, to convey the same with or without monetary consideration therefor to the United States of America....

2. In an affidavit filed with the court, Martin states: "I was first informed of the government's claim to have a dredged spoil disposal easement affecting the property on or about December, 1986, in the course of negotiations with the U.S. Army Corps of Engineers, Galveston District regarding permit application to construct a marina development on the property."

[would] take place in USCOE spoil disposal area no. 240 located north of Old Park Road 100 with the exception of minimal dredging below the MHW line." The Corps further requested that Martin indicate the disposal area in his plans and told him that the permit he sought, if granted by the Corps, would be conditioned to exclude all work from being performed within the limits of the disposal area. On August 5, Hummel recorded that these revised plans for the project had been submitted.

On September 9, 1986, Hummel spoke with Mike Hightower, an engineering and environmental consultant who had been retained by Martin. Hummel's notes of the teleconference state that Martin agreed that as the permittee he would be on notice that his project activity would be "in close proximity to a currently undefined dredge disposal area" and that "the possibility exists that dredged material and dust from disposal operations may adversely affect the permitted activity." The language of this condition was incorporated within the permit granted to Martin by the Corps on September 18, 1986. On that same day, the Corps issued its Environmental Assessment and Statement of Findings for the permit application, which concluded that the permit should be granted, provided "the applicant . . . agreed to include in the project plans the stipulation that no construction would take place within Disposal Area Number 240."

The permit allowed Martin to construct a marina on his property within the next three years.[3] On March 3, 1989, Martin asked the Corps to extend the permit for another three years, until December 1992. The Corps approved this extension on March 30, 1989, stating that "[a]ll conditions to which the work [was] made subject remain in full force and effect. . . ." At oral argument the court was told that this permit has been further extended for yet another three years, until December 1995.

On June 23, 1987, Martin filed suit in the United States District Court for the Southern District of Texas against Freeland, Law-

yer's Title Insurance Corporation, and others. The complaint alleged that Freeland knew the property was subject to the easement discussed above and that he wrongfully and knowingly concealed this information, and charged Freeland and the others with breach of contract, common law fraud, and breaches of fiduciary duties, among other claims.

Freeland responded by joining the United States as a third-party defendant. The third-party complaint sought a declaratory judgment from the district court that the Corps' navigational servitude was unnecessary and unwarranted, that the Corps violated the Fifth Amendment rights of Martin, Freeland, and the others by effecting a taking without payment of just compensation, and that the spoilage disposal easement was void or voidable as to the property.

The United States moved for summary judgment on the third-party complaint on the grounds that the statute of limitations in the Quiet Title Act, 28 U.S.C. § 2409a(g), barred relief from being granted. Concluding that Freeland should have known about the disposal easement no later than November 2, 1972, the district court granted the United States' motion. *Martin v. Freeland,* No. B-87-130 (S.D.Tex. May 31, 1988) (order granting summary judgment for third-party defendant). Subsequently, Martin and the defendants settled their litigation for undisclosed consideration and the first-party complaint was dismissed.

In or about January 1989, the Corps deposited spoilage from dredging operations in the Laguna Madre onto the 23.67 acre tract of land within the boundaries of Disposal Area No. 240. Martin filed a complaint in this court on July 17, 1990, alleging a taking and seeking just compensation. The United States answered by pleading a number of affirmative defenses, among them statute of limitations, failure to state a claim, and res judicata, and subsequently filed its motion to dismiss the complaint for failure to state a claim.

---

3. Notably, Martin does not plead in his complaint that the permit was denied. The court emphasizes that the motion papers and admissions at oral argument indicate that the permit was indeed granted, subject to conditions imposed by the Corps to which Martin agreed.

In his complaint, plaintiff alleges that he submitted an application to the Corps to commence construction for boat slips and thereafter entered into negotiations with the Corps for a permit to do so. During these negotiations, the complaint avers, plaintiff learned of the Corps' asserted right to deposit spoilage on his property. The complaint pleads that the Corps dumped spoilage on his property in or about January 1989, and concludes that "[t]he Corps' assertion of a right to spoil the Property and its actual dumping of spoilage on the Property constitute a taking of the Property without just compensation...." The complaint only makes reference to this one spoilage deposit on the property. As of January 19, 1994, the date on which the court heard oral argument, no other spoilage deposits had been placed on the property.

## DISCUSSION

### A. Was There an Easement?: Issue Preclusion

The Corps claims it has a valid easement over Martin's property, within the boundaries of Disposal Area 240, to dump spoilage. Martin challenges this easement in this court, as he did before in federal court in Texas. The government replies that Martin should not be allowed to re-open this issue, and thus has pleaded the affirmative defense of res judicata, otherwise known as claim preclusion.

■ The court finds that instead of res judicata, the narrower doctrine of collateral estoppel, or issue preclusion, is more directly applicable under the facts as pleaded. The Supreme Court has expressed this distinction between the two defenses by remarking:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). "[P]reclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Dep't of Natural Resources and Conservation of the State of Montana v. United States,* 1 Cl.Ct. 727, 738 (1983). In this court, Martin seeks a Tucker Act remedy which was unavailable to him in the earlier district court lawsuit; consequently, the cause of action presently in this court is dissimilar and res judicata cannot apply. Notwithstanding the government's initial pleading of res judicata as an affirmative defense, the parties appear to agree that issue preclusion more properly applies as each has briefed the argument discussed herein in that fashion.

■ The Court of Appeals for the Federal Circuit had held that for the court to apply the doctrine of issue preclusion, the party seeking its use must demonstrate four points: (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the prior action. *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983); *De Vries v. United States,* 28 Fed.Cl. 496, 499 (1993). These requirements will be discussed individually to foster clarity.

#### 1. Identity of Issues

■ The complaint that Martin filed in district court in Texas against Freeland, his predecessor-in-interest, featured allegations of breach of contract, common-law and statutory law, and RICO violations. In essence, Martin claimed that Freeland knew or should have known of the Corps' disposal easement over the land sold to Martin but failed to disclose this easement interest. Martin did

not argue the invalidity of the easement. His lawsuit against Freeland was based on the existence of a valid and legal easement. Freeland's third-party complaint against the United States as third-party defendant was styled as a request for declaratory relief. Specifically, Freeland asked the district court to declare that "the conduct of the Corps violates rights guaranteed to Martin, Freeland, and [third-party co-plaintiff McAllen State] Bank by the Fifth Amendment to the United States Constitution" and that "the Easement is void or voidable as to the property."

In his present complaint, Martin alleges that the Corps "has continued to assert its right to spoil the Property, pursuant to an alleged right of way easement deed," requesting that "the Court enter an order declaring that defendant has taken plaintiff's property in violation of plaintiff's rights under the Fifth Amendment to the Constitution." In the face of the government's reliance on the easement as legal support for its right to use portions of Martin's land for deposits, Martin is challenging the legal validity of the easement, just as Freeland did in the district court case.[5] Thus, the issue in Martin's complaint reduces to whether the Corps has now or ever did have the right to deposit spoilage on the subject property now owned by Martin and once owned by Freeland. Both the third-party complaint in the Texas litigation and the complaint here question the validity of the easement under which the Corps is asserting its right-of-way on the property. As identified previously, the district court resolved the third-party complaint by noting that Freeland should have known of the easement no later than November 1972, and therefore his prayer for declarato-

ry relief was time-barred under the applicable statute of limitations.

In his submissions to this court, Martin argues that the only "issue" decided by the district court was whether Freeland's prayer for declaratory relief was time-barred pursuant to 28 U.S.C. § 2409a(g)—the court did not pass on the issues presented here, namely, whether the easement was valid or whether Martin could have discovered that there was an easement in the first place. It may be, as Martin urges, that the Texas court did not "adjudicate" or "resolve" the issue framed in the third-party complaint, but whether the statute-of-limitations-based holding "resolved" the issue is another discrete question that the court must address below. In the context of whether there was an "identity of issues" for the purposes of applying issue preclusion, the court finds that there was such an identity. The operative facts of this complaint and the earlier third-party complaint are the same and both complaints challenge the validity of the Corps' easement and invoke the Fifth Amendment as a theory of relief.

### 2. "Actually Litigated"

█ The question of whether the easement dispute presented in the third-party complaint was "actually litigated" presents a more difficult question. The Texas district court held that it was too late for Freeland to challenge the validity of the easement because of the twelve-year time bar of the Quiet Title Act. The government argues that this holding, grounded in a statute of limitations, amounts to a conclusion that the Corps has a valid easement. Martin urges that the Texas court decided nothing except

---

5. While the district court's holding that the easement as to Freeland was valid and binding benefited Martin's claim in that court and subsequently resulted in a settlement of that claim, Martin, reversing gears, now argues in this court that the easement should be declared illegal, providing a basis for recovery from the United States. The court notes that situations such as this, in which the position a party advances in a suit directly contradicts the position he took in an earlier suit, might make one think of the doctrine of judicial estoppel. Some jurisdictions have applied judicial estoppel to prevent litigants from arguing whatever state of facts seems most

advantageous at a particular point in time, thus preventing litigants from abusing the judicial process and avoiding unfair results. See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 665–66 (Fed.Cir.1988), and citations therein; see also Aleutian Constructors v. United States, 24 Cl.Ct. 372, 388–89 (1991). Under these facts, it would not be unreasonable to invoke judicial estoppel against Martin to prevent this shift in argument. The Federal Circuit, however, has not yet explicitly accepted judicial estoppel, and in any event the court's decision in this matter rests on other independent grounds.

that the time-bar in the Quiet title Act had expired, thus, the validity of the easement or any other substantive issue was not decided. The "actually litigated" requirement is "generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it." *Mother's Restaurant, Inc.*, 723 F.2d at 1570 (quoting *Continental Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979)).[6] Thus, to determine whether issue preclusion applies the court must first determine whether the Texas court "resolved" the legality of the easement.

In his submissions, Martin argues that "[t]he district court's order does not address or dispose of issues concerning the validity of the easement or Martin's own notice or constructive notice of the easement," and that "finding that an action is time barred ... does not resolve any issue of validity of title," citing *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Hiding behind this fact-focused assertion is a fundamental question: whether a court "decides" anything when it dismisses a complaint on the basis of a statute of limitations.[7]

As an initial point, the court notes that when a court dismisses an action on statute of limitations grounds, that dismissal may bar a subsequent suit through an invocation of res judicata. For a party to plead res judicata as an affirmative defense, the previous litigation had to have featured a final judgment on the merits. *Montana v. United States*, 440 U.S. at 153, 99 S.Ct. at 973. It appears settled that a statute of limitations dismissal should be construed as a final "judgment on the merits." The rationale for this standard was elucidated by the Federal Circuit in *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 686–89 (Fed. Cir.1992), in a discussion of the difference between a court's dismissal of a case for lack of subject matter jurisdiction and a court (that has properly exercised jurisdiction) dismissing a case for failure to state a claim. Essentially, the two dismissals are distinguishable in that if a court passes at all on the question of whether a plaintiff has alleged sufficient facts to make out a cause of action, the court must have taken jurisdiction over the claim in the first place. Having taken jurisdiction, the court has the power to test the sufficiency of the claim, and "[t]o the

---

**6.** For the purpose of analyzing this question, the court will take the word "parties," as used by the Federal Circuit, to mean those who take opposite sides in a dispute presented to the trier of fact. Whether Martin was a "party" in the prior litigation is a question the court resolves below.

**7.** Martin cites *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), for the proposition that a statute of limitations does not "resolve" title disputes between a claimant and the United States. In *Block*, the Supreme Court held that the Quiet Title Act of 1972, 28 U.S.C. § 2409a (the law asserted by Freeland in his third-party complaint), was the exclusive means by which adverse claimants can challenge the United States' title to real property. Title to riverbeds on the Little Missouri River in North Dakota depended on whether the river had at any point been navigable. The lower courts found that the river was navigable when North Dakota entered the Union in 1889, and thus it could claim title to the riverbed. No other bases for either party demonstrating valid title appear to have been introduced. *Id.* at 278–79, 103 S.Ct. at 1815–16. The Supreme Court reversed, applying the Quiet Title Act's twelve-year statute of limitations, § 2409a(f) (presently codified at § 2409a(g)). Explaining that even constitutional claims are subject to time bars, the Court stated that

Section § 2409a(f) ... does not purport to strip any State, or anyone else for that matter, of any property rights. The statute limits the time in which a quiet title suit against the United States can be filed; but, unlike an adverse possession provision, § 2409a(f) does not purport to effectuate a transfer of title. If a claimant has title to a disputed tract of land, he retains title even if his suit to quiet title is deemed time-barred under § 2409a(f). A dismissal pursuant to § 2409a(f) does not quiet title to the property in the United States. The title dispute remains unresolved.

*Id.* at 291, 103 S.Ct. at 1822. The court cannot disagree with the statement that § 2409a(f) neither strips a claimant of rights nor effectuates a transfer or title. The court does disagree that the rule expressed in *Block* applies to the facts at issue in Martin's case. As the district court order makes clear, the United States was granted an easement over the 23.67 acre parcel in 1947. If Martin's predecessor-in-interest previously conveyed title to the property, a mixed question fact and law determined by the district court, then the district court's application of § 2409a(f) had the effect of preserving the status quo, just as *Block* had the effect of preserving the status quo by disallowing North Dakota from gaining satisfaction under the Quiet Title Act.

extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks." *Spruill,* 978 F.2d at 687.

Among the prior cases addressed by the Federal Circuit in *Spruill* was *Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 639–40 (Fed.Cir.1989), in which the court had to determine whether a successful affirmative defense of a time bar meant that the court lacked jurisdiction or merely meant that plaintiff failed to state a claim for which relief could be granted. The court held that decisions grounded in applying a statute of limitations are indeed judgments on the merits. This is because

> the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.

*Id.* at 639 (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)), *quoted in Spruill,* 978 F.2d at 687. The Court of Federal Claims has since applied this rule. *See L.E. Cooke Corp. v. United States,* 27 Fed.Cl. 753, 755 (1993) ("Any doubt that a successful staleness defense results in a dismissal on the merits has been resolved by *Spruill.*"). *See also L.E. Cooke Corp.,* 27 Fed.Cl. at 755 n. 3 (collecting cases from other jurisdictions expressing this general rule).

Because a successful time bar defense results in a judgment on the merits, that judgment is considered res judicata. *Spruill,* 978 F.2d at 687 n. 10. But does this mean that "a disputed issue has been resolved by the court" precluding that issue's relitigation? On these facts, the court concludes that the district court did decide an issue in that case that cannot be relitigated if the other requirements for issue preclusion are satisfied. Martin appears to argue that the "disputed issue" in the district court was "whether the action was time-barred," and all that the

court decided was that the statute of limitations foreclosed the possibility of a successful complaint by Freeland. The discussion above, however, indicates that the reason time bars are judgments on the merits is because the court necessarily determines that the plaintiff should not be granted the relief he seeks. Put another way, a judgment on the merits is an order stating that a disputed issue has been resolved in favor of the successful litigant. Accordingly, the court disagrees that the district court order merely resolved the "issue" of the pleaded affirmative defense, as an examination of the order attests. Freeland had asked the court to pass on the validity of the alleged 1947 easement, and the Corps replied that Freeland's statutorily-defined tardiness prevented the court from giving him anything. Properly, the issue presented by this third-party complaint was "does the Corps have a right to spoil the property or not?" To draw its conclusion, the court examined evidence submitted by the parties on the government's summary judgment motion, and found that "Freeland should have discovered that the 23.67 acre tract was subject to an easement to dispose soil," and that "as a matter of law Freeland should have known of the easement [by] November 2, 1972."

Issue preclusion is available in a later suit "once an issue is actually and necessarily determined by a court of competent jurisdiction." *Montana v. United States,* 440 U.S. at 153, 99 S.Ct. at 973. Because the Corps' right to spoil the property was resolved by the district court, the court finds that the issue was "actually litigated".

### 3. Necessary Determinations

■ "In order to give preclusive effect to a particular finding in a prior case, that finding must have been necessary to the judgment rendered in the previous action." *Mother's Restaurant, Inc.,* 723 F.2d at 1571. "[T]he purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue for precluding reconsideration of that issue in later litigation." *Id.* Clearly, the issue the district court resolved in the previous suit was the essence of the judgment it rendered.

### 4. Representation of a Party in the Prior Action

■ The final requirement for issue preclusion is that the party being precluded must have been fully represented in the prior action. *Mother's Restaurant, Inc.*, 723 F.2d at 1569. One may have been "fully represented" in a prior action, however, without having been a party. As the Supreme Court has reiterated, it is a fundamental precept of claim preclusion and issue preclusion that a "right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *Montana v. United States*, 440 U.S. at 153, 99 S.Ct. at 973 (quoting *Southern Pacific R.R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)). Issue preclusion is possible when the party in a later suit is in privity with a party to an earlier suit. Largely because the determination of identity between litigants for the purpose of establishing privity is a factual question, *Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1276 (10th Cir.1989),

> [t]here is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same.

*Id.* at 1274–75. Accordingly, "[p]rivity has been held to exist in the following relationships: concurrent relationship to the same property (i.e. trustee and beneficiary), successive relationship to the same property (i.e. seller and buyer); or representation of the interests of the same person." *Id.* at 1275 (citing 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice*, ¶ 0.411[1] at 392 (2d. ed. 1988)).

On the facts presented, the court finds that Martin was in privity with Freeland. Freeland's third-party complaint in the district court was predicated on an absolute right of title to the 23.67 acre parcel of land on which the Corps was dumping spoilage. It has been determined as a matter of law that at a time during which Freeland owned the property, he should have known that the Corps had an easement on it. Freeland sold the parcel to Martin. Whether the seller, Freeland, was forthright with the buyer, Martin, with respect to potential complications in this land sale is not the relevant question at the moment; what matters is that Martin has the same relationship to the land as his predecessor-in-interest did, and indeed both what the seller sought to be determined in the prior litigation and what the buyer seeks to be determined in this litigation are the same.

The court's determination that Martin is Freeland's privy as his successor-in-interest to the land is sufficient to demonstrate that Martin's interests had been represented in the earlier action. Further than this, though, it must be remembered that Martin not only knew about the district court suit, he started it. The district court resolved the issue discussed above in the procedural context of deciding a summary judgment motion arising out of the third-party complaint, but as first-party plaintiff Martin is charged with knowing of the case's status as it proceeded toward dismissal. The Federal Circuit has acknowledged that this fourth requirement of "full representation" is a "condition for the application of issue preclusion that includes the requirement of *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), that a party has had a 'full and fair chance to litigate' the issues to be precluded." *Mother's Restaurant, Inc.*, 723 F.2d at 1569 n. 4. Certainly, Martin had a full and fair opportunity to make the positions he puts forth in this court known in the prior district court action. In a memorandum to the court Martin states that issue preclusion should not be allowed because he and the United States were "not adversaries" in the district court and that "it could not be expected that Martin would be aligned with Freeland with respect to the issue of Freeland's notice of the easement." Though the court is inclined to agree, what may have been argued before to attain satisfaction from Freeland is irrelevant to whether he was associated with the earlier suit as either

party or privy. The court finds he was both. It is clear that Martin had a direct financial interest in the outcome of the district court litigation. *See Dep't of Natural Resources and Conservation of the State of Montana v. United States,* 1 Cl.Ct. at 740–41.

Therefore, because each of the four requirements for issue preclusion has been satisfied by the government, the court will preclude the issue of whether the Corps had an easement to dump spoilage on the property from being relitigated in the present action. For the purposes of this motion, the court finds that the property owned by Freeland, Martin's predecessor-in-interest, was subject to an easement granted to the United States, and that Freeland should have known about this easement no later than November 2, 1972.

## B. Did Martin File His Complaint Too Late?

▉▉▉ The government also asserts that Martin can obtain no relief in this court because he failed to meet the applicable statute of limitations. In order for the Court of Federal Claims to entertain a plaintiff's claim, the plaintiff must sue in this court within six years after the claim first accrues. 28 U.S.C. § 2501; *Alliance of Descendants of Texas Land Grants v. United States,* 27 Fed. Cl. 837, 842 (1993). A claim first accrues when all the events have occurred which fix the alleged liability of the government and entitle the plaintiff to institute an action. *Id.* Where the nature of the taking alleged takes the form of a physical invasion or an entry into possession by the government, the cause of action arises at the time the entry or physical invasion occurred. *See United States v. Dow,* 357 U.S. 17, 22, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958); *Alliance of Descendants v. United States,* 27 Fed.Cl. at 842; *Steel Improvement & Forge Co. v. United States,* 174 Ct.Cl. 24, 29–30, 355 F.2d 627, 631 (1966).

▉▉▉ The point at which the cause of action accrues is important not only to fix the deadline for filing suit but also to determine what person gets to bring the suit in the first place. Only the owner of the property at the time of the taking may sue for just compen-

sation; in the absence of an assignment that comports with the Assignment of Claims Act, 31 U.S.C. § 3727, subsequent owners may not. In *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), the Supreme Court held that a landowner who acquired land after the United States had entered into possession of an easement over it but before the United States filed its "declaration of taking" was not entitled to just compensation. Because "compensation is due at the time of the taking, the owner at that time, not the owner at an earlier or later date, receives the payment." *Id.* at 20–21, 78 S.Ct. at 1044 (quoting *Danforth v. United States,* 308 U.S. 271, 284, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939)). The Court explained further that

> the passage of title does not necessarily determine the date of a "taking." The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. The owner at the time the Government takes possession "rather than the owner at an earlier or later date, is the one who has the claim and is to receive payment."

*United States v. Dow,* 357 U.S. at 22, 78 S.Ct. at 1044 (citations omitted). *See also Blaze Constr., Inc. v. United States,* 27 Fed.Cl. 646, 658 (1993) (claimant must demonstrate it had enforceable ownership rights); *Vroman v. United States,* 147 Ct.Cl. 285, 287, 177 F.Supp. 257, 258 (1959) (claimant must "exercise the full rights of owner"; deed executed to claimant was irrelevant because the deed didn't carry with it a right of action for compensation).

▉▉▉ As the district court made clear in its memorandum and order granting summary judgment for the United States, the Corps was depositing spoilage on the subject property as early as 1972, when Freeland owned the property. Thus, any claim based on the invalidity of the easement accrued in 1972. Because Martin's claim in this court

was filed on July 17, 1990, his taking claim is clearly barred by 28 U.S.C. § 2501. The government's assertion of ownership by means of the easement arose in 1947 and mere invalidity of the easement, if proven, is not relevant in determining when and whether a taking occurred. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 890 (Fed.Cir. 1983). Viewed another way, one could also conclude that the recordation of the easement which the United States received in 1947 was notice to all of the right to use certain land for spoilage purposes. This interference with the land through an authorized assertion of ownership constitutes a taking. *See Bourgeois v. United States,* 212 Ct.Cl. 32, 35–36, 545 F.2d 727, 729 (1976).

Accordingly, if anyone under the facts presented is entitled to make out a claim for just compensation, it is Freeland, not Martin. The Corps has dumped spoilage on the property now owned by Martin only once since he purchased it in 1985, but it is equally clear that a cause of action under the Tucker Act arose many years before 1989, arising in someone other than the plaintiff presently in this court. If it is true, as Martin alleges, that at the time he bought the property he didn't know about the easement or the spoilage or reasonably could have discovered either, misinformation compounded by Freeland's alleged disingenuousness, then the court would be unable to say that Martin would have no legal remedy available to him. Indeed, the prior complaint filed in district court appears to have ended favorably to Martin. In this court, however, the doors to relief were closed before Martin arrived. *See United States v. Dow,* 357 U.S. at 27, 78 S.Ct. at 1047 ("[W]hatever may be the equities between the former owners and Dow, or between the Government and the former owners, ... such equities cannot serve to prevent the application of the correct rule of law as between the Government and Dow in this case.").

### CONCLUSION

Accordingly, for the reasons expressed above, the court grants defendant's motion to dismiss. The Clerk of the Court shall enter judgment dismissing the complaint. No costs.